948 So.2d 803 (2006)
John DOE, M.D., Petitioner,
v.
DEPARTMENT OF HEALTH, Respondent.
No. 2D06-1273.
District Court of Appeal of Florida, Second District.
December 27, 2006.
Rehearing Denied February 27, 2007.
*804 Jon M. Pellett of Barr, Murman, Tonelli, Slother & Sleet, Tampa, for Petitioner.
Wings S. Benton, Appellate Section Head, Prosecution Services Unit, and M. Rony Francois, M.D., M.S.P.H., Ph.D., Secretary, Department of Health, Tallahassee, for Respondent.
ALTENBERND, Judge.
John Doe[1] is a physician who is the subject of a disciplinary investigation by the Department of Health. As part of its *805 investigation, the Department issued a subpoena seeking certain limited peer review records regarding Dr. Doe from a hospital where Dr. Doe had staff privileges. Dr. Doe sought to quash the subpoena, arguing the records sought were privileged and could not be provided to the Department. In this petition to review nonfinal agency action,[2] Dr. Doe seeks review of the Department's order denying his motion to quash the subpoena.
The outcome of this case turns upon the interpretation of seemingly conflicting statutes, sections 458.331(9) and 458.337(3), Florida Statutes (2005), and sections 395.0193(8) and 766.101(5), Florida Statutes (2005). When read together, however, the statutes can be reconciled to promote the legislative intent behind each statute. Accordingly, we conclude that sections 458.331(9) and 458.337(3) permit the Department to subpoena this information for the purposes of its investigation of Dr. Doe, and that the provisions of sections 395.0193(8) and 766.101(5) do not prohibit the release of the information to the Department. The limited release of information to the Department is vital to Florida's physician disciplinary process, designed to assure acceptable levels of competence among physicians; it is not the type of public disclosure in a malpractice lawsuit or other civil or administrative claim that sections 395.0193(8) and 766.101(5) are intended to address. Indeed, the release of information to the Department as permitted by section 458.337(3) maintains the broader confidential and exempt nature of the information disclosed. It permits a robust and frank disciplinary process by permitting the limited disclosure to the Department, while protecting the participants from the threat of a public disclosure of any information for use in a malpractice or other action against the physician. We thus deny Dr. Doe's petition.
Dr. Doe resigned his staff privileges at a Florida hospital in May 2005. Pursuant to section 458.337(1)(a), (2), the hospital notified the Department that Dr. Doe had voluntarily surrendered his privileges while under, or to avoid, an investigation relating to his professional competence or conduct. Our limited record does not contain a document from the hospital detailing the basis for its investigation of Dr. Doe. However, when the Department notified Dr. Doe of its investigation, it indicated that the allegations involved a possible violation of sections 456.072(1)(y) and 458.331(1)(s), Florida Statutes (2005).
On October 28, 2005, the Department informed Dr. Doe that it was investigating him based upon the hospital's report.[3] In connection with the investigation, the Department issued a subpoena to the reporting hospital which requested
a summary of the issues discussed by the Peer Review Committee (Committee) pertaining to [Dr. Doe] that concerns incidents that could constitute a violation of the Medical Practice Act and/or Osteopathic Medicine Practice Act. Identify any patient records reviewed *806 by the Committee by patient name and relevant dates or by patient file number. The identity of the members of the Committee need not be disclosed.
Dr. Doe became aware of the issuance of this subpoena and notified the hospital and the Department that he objected to the hospital releasing these records. He filed a motion to quash the subpoena with the Department, arguing primarily that the documents requested were privileged under sections 395.0193(8) and 766.101(5) and thus could not be released to the Department.[4] The Department denied the motion, and Dr. Doe filed this petition to review the Department's order. Apparently, the parties have agreed to defer compliance with or enforcement of the subpoena until this court decides this petition.[5]
The Department is entitled to issue subpoenas as part of its investigation in physician disciplinary proceedings pursuant to section 456.071, which provides:
For the purpose of any investigation or proceeding conducted by the department, the department shall have the power to administer oaths, take depositions, make inspections when authorized by statute, issue subpoenas which shall be supported by affidavit, serve subpoenas and other process, and compel the attendance of witnesses and the production of books, papers, documents, and other evidence.
In turn, there are two statutes that specifically contemplate that the Department will have access to peer review documents when conducting an investigation regarding physician discipline. Section 458.337 requires hospitals to notify the Department of adverse disciplinary actions they take against a physician.[6] Section 458.337(3) states:
Any organization taking action as set forth in this section shall, upon department subpoena, provide copies of the records concerning the action to the department. However, those records shall be used solely for the purpose of the department and the [B]oard [of Medicine] in disciplinary proceedings. The records shall otherwise be confidential and exempt from s. 119.07(1). These records shall not be subject to discovery or introduction into evidence in any administrative or civil action.
Section 458.331 entitled "Grounds for disciplinary action; action by the board and department" sets forth the grounds upon which the Department may discipline a physician. Subsection (9) provides that when the Department is investigating a *807 physician for potential discipline, it must furnish to the physician certain documents:
For purposes of this subsection, such documents include, but are not limited to . . . a report of peer review disciplinary action submitted to the department pursuant to s. 395.0193(4) or s. 458.337, providing that the investigations, proceedings, and records relating to such peer review disciplinary action shall continue to retain their privileged status even as to the licensee who is the subject of the investigation, as provided by ss. 395.0193(8) and 458.337(3). . . .
These statutes specifically contemplate that the Department will have access to the peer review records supporting the hospital's discipline of a physician, and those documents will form the initial basis for the Department's investigation of the physician. In turn, those documents will remain "privileged" for all other purposes.
There is no dispute that the information sought by the Department's subpoena is generally privileged under sections 395.0193(8) and 766.101(5). Section 395.0193(8), which is located in chapter 395 of the Florida Statutes regarding hospital licensing and regulation, and section 766.101(5), which is located in chapter 766 of the Florida Statutes regarding medical malpractice and related matters, both provide that the "investigations, proceedings, and records" of a peer review panel or medical review committee "shall not be subject to discovery or introduction into evidence in any civil or administrative action against a provider of professional health services." (Emphasis added.) Dr. Doe argues that the Department's subpoena is an attempt at "discovery" in an "administrative action" and thus these statutes specifically prohibit the disclosure of these records. This argument is supported by the fact that a subpoena is often a tool used to obtain discovery and by language in section 456.073 describing physician disciplinary proceedings in terms suggestive of an "administrative action." See § 456.073(4) (discussing "a formal complaint" against the physician to be "prosecute[d] . . . pursuant to chapter 120"); § 456.073(5) (providing that the complaint is subject to a "formal hearing before an administrative law judge . . . pursuant to chapter 120"); § 456.073(7) (permitting "judicial review . . . pursuant to s. 120.68"); see also § 458.331 (describing disciplinary action taken against physician under that section as an "administrative action against a physician").
To read these statutes in the unqualified manner that Dr. Doe suggests, however, would ignore the provisions in sections 458.331(9) and 458.337(3), which clearly envision the Department's access to some peer review records in physician disciplinary proceedings. This interpretation would also render the statutory disciplinary process unworkable, by denying the Department access to the records that initiated the disciplinary process and that are critical to the Department's evaluation of the physician's competency.[7]
*808 When the language of a statute conveys a clear and definite meaning, there is usually no occasion to resort to rules of statutory interpretation and construction. Holly v. Auld, 450 So.2d 217, 219 (Fla.1984). However, a literal interpretation of the language of a statute need not be given when to do so would lead to an unreasonable conclusion. Id. A departure from a literal interpretation of the statute may be merited when there are "cogent reasons" for believing that the letter of the law does not accurately disclose the legislative intent. Id. (citing State ex rel. Hanbury v. Tunnicliffe, 98 Fla. 731, 124 So. 279, 281 (1929)). Further, if a literal interpretation of the language of one statute would lead to an unreasonable conclusion regarding the interpretation of a related statute, the courts are not compelled to assume that the legislature acted unreasonably, especially when doing so would violate the stated legislative intent of one or more statutes. Where possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another. Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla. 1992); see also McGhee v. Volusia County, 679 So.2d 729, 730 n. 1 (Fla.1996) ("The doctrine of in pari materia requires the courts to construe related statutes together so that they illuminate each other and are harmonized.").
The legislative intent of chapter 458 is specifically expressed in section 458.301, which states in pertinent part:
The primary legislative purpose in enacting this chapter is to ensure that every physician practicing in this state meets minimum requirements for safe practice. It is the legislative intent that physicians who fall below minimum competency or who otherwise present a danger to the public shall be prohibited from practicing in this state.
Similarly, the expressed legislative intent of chapter 395, which includes the basic structure for peer review, is to "provide for the protection of public health and safety." See § 395.001. In contrast, the privilege provided to peer review documents is intended to permit the peer review committee to carry out its function  a function that includes physician discipline  without the chilling effect that potential public disclosure might have on that process. See Cruger v. Love, 599 So.2d 111, 114-15 (Fla.1992).
Given the expressed collective legislative intentto provide a process of confidential peer review, not chilled by the potential public exposure of information, that will permit the discipline of physicians necessary to protect the public health and safety  the statutes must be read in pari materia to conclude that the Department has access to peer review records under sections 458.331(9) and 458.337(3). As such, the language in sections 395.0193(8) and 766.101(5) that states that these records "shall not be subject to discovery or introduction into evidence in any civil or administrative action against a provider of professional health services" must be read to apply to "any . . . administrative action against a provider" other than a physician disciplinary proceeding by the Department.[8] Indeed, this interpretation is supported *809 by section 458.337(3), which specifically provides for the Department's access to the hospital's disciplinary records and repeats the same phrase, "These records shall not be subject to discovery or introduction into evidence in any administrative or civil action."
It is sometimes helpful to remember that statutory interpretation is not a contact sport played between the judiciary and the legislature as members of opposing teams. Statutory interpretation is an important function of the judiciary designed to facilitate the functioning of the legislature and the fulfillment of the laws and policies adopted by the legislature. The judiciary must use a degree of common sense in deciding whether the legislature's intent is sufficiently clear that the court may imply a qualifying phrase within a statute.[9] If there is any reasonable concern that a reading other than a strict interpretation might not comport with the legislature's intent, the legislature should generally be required to amend the statute, if that is necessary to fulfill its actual intent.
In this case, however, we harbor no doubt that our holding, though it implies wording that is not explicit in sections 395.0193(8) and 766.101(5), fulfills the legislative intent and facilitates the implementation of the legislature's policies as set forth in the statutes regarding peer review and physician discipline as a whole. Indeed, to hold otherwise would effectively result in rendering section 458.337(3), and perhaps the entire disciplinary process upon which peer review is based, meaningless.
The Department was entitled to the peer review records it sought from the hospital. The Department properly denied Dr. Doe's motion to quash the subpoena. We therefore deny the petition to review nonfinal agency action.
Petition denied.
SALCINES and LaROSE, JJ., Concur.
NOTES
[1] Dr. Doe's identity is confidential at this stage of the proceedings pursuant to section 456.073(1), Florida Statutes (2006).
[2] See Fla. R.App. P. 9.100(c)(3); § 120.68(1), Fla. Stat. (2005).
[3] In his petition to this court, Dr. Doe has argued that the complaint filed by the hospital was facially insufficient under section 456.073(1) to permit the Department's investigation, and that the hospital's complaint was premature under section 458.337(1)(a)(2), (2). These issues were not the subject of the order we now review. Further, we are not convinced that determinations regarding the sufficiency of the hospital's complaint are an appropriate subject for review of nonfinal administrative action. See § 120.68(1) (permitting review of a nonfinal agency action when "review of the final agency decision would not provide an adequate remedy").
[4] We note that in seeking to quash the Department's subpoena, Dr. Doe also asserted that the Department could not obtain patient records without express authorization from the patient. This issue was not addressed in the Department's order and has not been the focus of the arguments on appeal. Moreover, the subpoena simply asked the hospital to identify any patient records that the peer review committee reviewed and permitted the hospital to identify those records by a patient number. The subpoena did not request the patients' actual records.
[5] The hospital is not a party to these proceedings. However, our record indicates that the hospital has previously opined that the documents requested should be available to the Department under the applicable statutes for use in the disciplinary proceedings against Dr. Doe.
[6] Although section 458.337 does not specifically refer to the peer review process, section 395.0193 creates a state-mandated peer review process for hospitals to discipline physicians. Thus it appears that the primary, if not only, method of physician discipline at a hospital would occur through the peer review process.
[7] Dr. Doe has argued that our opinion in Bayfront Medical Center, Inc. v. State, Agency for Healthcare Administration, 741 So.2d 1226 (Fla. 2d DCA 1999), supports a finding that these peer review records are not available to the Department. We disagree. In Bayfront, the agency sought peer review records not in a physician disciplinary proceeding, but as part of its role in risk management review as set forth in section 395.0197, Florida Statutes (1997). Thus sections 458.331(9) and 458.337(3) were not implicated in the court's analysis. Instead, section 395.0197(11) provided the agency access only to the "facility records necessary to carry out the provisions of this section." Because the statutes provided the agency access to sufficient records prepared specifically for the purpose of risk management review, this court concluded that the risk management review provisions were not intended to abrogate or overcome the peer review privilege provisions. Nothing in Bayfront conflicts with our decision in this case.
[8] A review of the legislative history of sections 395.0193(8) and 766.101(5) reveals that prior to 1990 the statutes referred only to "any civil action." The "or administrative" language was added in 1990. See chs. 90-341, § 17; 90-344, § 9, Laws of Fla. The 1990 enactments themselves, however, provide no explanation as to why the language was added. It is at least possible that the language was related to the 1988 creation of the Florida Birth-Related Neurological Injury Compensation Act, chapter 88-1, Laws of Florida, which created an administrative procedure to resolve a certain type of medical malpractice claim.
[9] We note that a court has more power to limit the application of a statute, as we do in this case, than to expand it. Under these circumstances, a court is less likely to interfere with the legislature's role in establishing public policy because its action guards against statutory overbreadth. See generally William D. Popkin, Materials on Legislation: Political Language and the Political Process 32 (2d ed. 1997).