964 So.2d 839 (2007)
Mark O'HARA, Appellant,
v.
STATE of Florida, Appellee.
No. 2D05-5078.
District Court of Appeal of Florida, Second District.
September 19, 2007.
*840 W. Thomas Wadley and Ira Berman of Yanchuck, Berman, Wadley & Zervos, P.A., St. Petersburg, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Marilyn Muir Beccue, Assistant Attorney General, Tampa, for Appellee.
NORTHCUTT, Chief Judge.
Mark O'Hara was convicted of trafficking in hydrocodone based on his possession of 58 Vicodin tablets containing that substance. See § 893.135(1)(c)(1)(c), Fla. Stat. (2004). At his trial, he presented evidence that physicians had prescribed the medication for pain he suffered from a chronic inflammatory joint disease and from injuries he had sustained in an automobile accident. O'Hara urges us to reverse his conviction, claiming that the evidence established that he possessed the tablets legally. But appellate counsel concedes that this evidentiary issue was not raised at trial in a motion for judgment of acquittal. As such, it is not preserved for our review. See Stephens v. State, 787 So.2d 747, 753-54 (Fla.2001). Trial counsel did, however, preserve the second issue on appeal by asking the court to instruct the jury that it was not illegal to possess hydrocodone if it had been prescribed. The State objected to the instruction and the court denied the request. We hold that O'Hara was entitled to the instruction, and, accordingly, we reverse his conviction and remand for a new trial.
O'Hara contends that section 499.03(1), Florida Statutes (2004), and section 893.13(6) each provide a "prescription defense" to a charge of trafficking by possession under the drug trafficking statute, section 893.135. Section 499.03 is part of the chapter addressing Drug, Cosmetic, and Household Products. It states, in pertinent part:
(1) A person may not possess, or possess with intent to sell, dispense, or deliver, any habit-forming, toxic, harmful, . . . or legend drug as defined in s. 499.003(25), unless the possession of the drug has been obtained by a valid prescription of a practitioner licensed by law to prescribe the drug.

*841 § 499.03(1) (emphasis supplied). Section 893.13(6), the criminal statute that prohibits and penalizes simple drug possession, contains a similar provision:
It is unlawful for any person to be in actual or constructive possession of a controlled substance unless such controlled substance was lawfully obtained from a practitioner or pursuant to a valid prescription or order of a practitioner while acting in the course of his or her professional practice. . . .
§ 893.13(6)(a) (emphasis supplied).
The drug trafficking statute, section 893.135, contains no express language setting forth a prescription defense. However, its proscriptions against the sale, delivery, or possession of trafficking amounts of certain drugs are prefaced by the following qualification: "Except as authorized in this chapter or in chapter 499 and notwithstanding the provisions of s. 893.13: . . ." § 893.135(1) (emphasis supplied). O'Hara argues that the emphasized language makes the above-quoted prescription defenses available to the defendant in a trafficking prosecution under section 893.135.
The State maintains that section 499.03(1) is simply inapplicable and does not provide a defense to a charge of trafficking by possession. It acknowledges that section 893.13(6)(a) provides a prescription defense to possession of controlled substances, but it contends that the defense does not apply to a defendant who is charged with possessing a trafficking amount. Cf. Neiner v. State, 875 So.2d 699, 700 (Fla. 4th DCA 2004) (discussing prescription defense in a case involving possession of a controlled substance that is not included in the trafficking statute). As we will discuss, the State is mistaken on both points.
We begin with section 499.03. To ascertain whether section 499.03(1) might authorize a defense to trafficking by possession of hydrocodone requires an odyssey through several statutes. By its terms, the defense under this subsection applies to possession of a "legend drug" as defined by section 499.003(25). That statute, in turn, defines "legend drug" as "any drug, including, but not limited to, finished dosage forms, or active ingredients subject to, defined by, or described by s. 503(b) of the Federal Food, Drug, and Cosmetic Act or s. 465.003(8), s. 499.007(12), or s. 499.0122(1)(b) or (c)."
Of those listed statutes, section 465.003(8), Florida Statutes (2004), provides the simplest definition: "legend drugs" are drugs that are "required by federal or state law to be dispensed only on a prescription." Section 893.04(1) states that a pharmacist may dispense a "controlled substance" only "upon a written or oral prescription." A controlled substance is defined in section 893.02(4) as "any substance named or described in Schedules I-V of s. 893.03." Hydrocodone is one of those substances. § 893.03(2)(a)(1)(j), (3)(c)(3)-(4). Therefore, hydrocodone is a "legend drug" for purposes of section 499.03(1). As such, the statute does not prohibit its possession if "possession of the drug has been obtained by a valid prescription of a practitioner licensed by law to prescribe the drug." Because the first subsection of the trafficking statute, section 893.135(1), excepts acts authorized under chapter 499 from the ambit of the described crimes, the authorized possession of hydrocodone under section 499.03(1) could provide a defense to O'Hara's trafficking charge.
The State asserts that section 499.03(1) does not apply here because the statutes mentioned in the definitional subsection to which it refers, section 499.003(25), address topics other than criminal drug possession or drug trafficking. For example, *842 the State dismisses the possibility that the statute we discussed in the preceding paragraph, section 465.003(8), could have any bearing here because chapter 465 deals with the regulation of pharmacists. But this view is undermined by the fact that section 499.03(1) wholly exempts pharmacists from its operation. After setting forth its prohibition against a "person" possessing legend drugs and its exception for the possession of drugs obtained by valid prescription, the statute states:
However, this section does not apply to the delivery of such drugs to persons included in any of the classes named in this subsection, or to the agents or employees of such persons, for use in the usual course of their businesses or practices or in the performance of their official duties, as the case may be; nor does this section apply to the possession of such drugs by those persons or their agents or employees for such use:
(a) A licensed pharmacist or any person under the licensed pharmacist's supervision while acting within the scope of the licensed pharmacist's practice;
. . .
§ 499.03(1). Clearly, then, the persons subject to the proscription set forth in section 499.03(1), as well as its exception for valid prescriptions, must be persons other than pharmacists.[1] And this must be true even though one of the statutes to which the section refers for the definition of legend drugs deals with pharmacists. In other words, the fact that section 499.03 refers to a definitional statute contained in a chapter regulating pharmacists cannot be deemed to limit the application of section 499.03(1) to situations involving the regulation of pharmacists, because pharmacists have a blanket exemption from the operation of section 499.03(1) in any event.
It would appear, then, that section 499.03(1) authorizes a person to possess a legend drug, including hydrocodone, if he obtained the drug by a valid prescription. Further, that authorization has been expressly incorporated in the trafficking statute by the introductory sentence of section 893.135(1).
But our inquiry does not end there. As we have mentioned, there is also a prescription defense contained in the drug possession statute, section 893.13(6). It provides a defense to the charge of simple possession of "controlled substances," a category that includes hydrocodone but that is less inclusive than the "legend drugs" category that is the subject of section 499.03. Under one principle of statutory construction, it might be argued that the more specific statute, section 893.13, controls over the more general one, section 499.03. See State v. Cregan, 908 So.2d 387, 391 (Fla.2005); McKendry v. State, 641 So.2d 45, 46 (Fla.1994) ("[A] specific statute covering a particular subject area always controls over a statute covering the same and other subjects in more general terms."). Consequently, we must also address the applicability of the section 893.13 prescription defense to a trafficking charge under section 893.135.
For this discussion, we return to the introductory sentence of the trafficking statute, section 893.135(1). Recall that *843 O'Hara points to the first phrase of that sentence in support of his claim that there is a section 893.13(6)(a) prescription defense to a charge of trafficking by possession. But the State maintains that the second phrase of the sentence wholly precludes any reliance on section 893.13 in trafficking cases: "Except as authorized in this chapter or in chapter 499 and notwithstanding the provisions of s. 893.13: . . ." § 893.135(1) (emphasis supplied).
This, according to the State, is "plain language" that means none of the provisions of section 893.13 can ever apply to the crimes delineated in section 893.135. The State invokes the oft-cited principle that when the language of a statute conveys a clear and definite meaning, courts will not resort to rules of statutory interpretation and construction. Holly v. Auld, 450 So.2d 217, 219 (Fla.1984). But this seemingly simple principle is subject to a number of qualifications. Under one of these, courts are admonished not to read statutory language in isolation. It must be taken in context, so that its meaning may be illuminated in the light of the statutory scheme of which it is a part. See Thompson v. State, 695 So.2d 691, 692 (Fla.1997). Consistent with this principle, the doctrine of in pari materia requires us to construe statutes relating to the same subject matter together in order to harmonize them and to give effect to the Legislature's intent. Fla. Dep't of State, Div. of Elections v. Martin, 916 So.2d 763, 768 (Fla.2005); Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla. 1992). Whenever possible, we must give full force to all statutory provisions. Doe v. Dep't of Health, 948 So.2d 803, 808 (Fla. 2d DCA 2006).
Applying these principles here, it is obvious that sections 893.13 and 893.135 are part of a statutory scheme addressing the possession of controlled substances, with the latter statute imposing more severe penalties for possessing larger, "trafficking," amounts of the drugs. And, indeed, the legislative history of the phrase at issue here"and notwithstanding the provisions of s. 893.13"informs us that its very purpose was to harmonize the two statutes. The language was added to section 893.135 in 1980. Ch. 80-70, § 1, at 233-35, Laws of Fla. As initially filed, neither the Senate bill giving rise to that law, SB 296, nor its House counterpart, HB 263, contained the disputed language. Rather, the bills' initial purpose simply was to amend the trafficking statute to include the drugs methaqualone and phencyclidine within its scope. But a Senate staff analysis pointed out the following problem:
This bill, as drafted, may create a duplication of penalties unless s. 893.13 is amended to except those quantities of Methaqualone and Phencyclidine to be covered by the trafficking section. Such an exception was made for large quantities of marijuana when the existing trafficking statute was created. However, certain other drugs covered by the trafficking statute, such as cocaine, were not excepted from s. 893.13, and thus, violations involving large quantities of these drugs may be prosecuted under either section. This duplication and any possible conflict could be eliminated by making the trafficking statute the exclusive provision for those drugs and quantities covered therein.

Fla. S. Comm. on Judiciary-Crim., CS for SB 296 (1980) Staff Analysis at 2 (May 1, 1980 (updated)) (available at Fla. Dep't of State, State Archives, Tallahassee, Fla.) (emphases supplied). The final bill, Committee Substitute for House Bill 263, addressed the problem discussed in the Senate staff analysis, but it took a different approach. Instead of adding new exceptions *844 to section 893.13, as proposed in the analysis, the bill deleted the existing exceptions in that statute and amended the introductory sentence of section 893.135 to include the language on which the State now relies. Ch. 80-70, §§ 1, 2, at 232-35; CS for SB 296 Staff Analysis.
This history discloses that the new language was placed in the statute to address a narrow concern: that offenders who possessed trafficking amounts of certain drugs might be prosecuted instead for simple possession under section 893.13, and thus they would be permitted to escape the more severe penalties mandated under the trafficking statute. Nothing in the enactment itself or in the history of the bills that resulted in the new law suggests that the Legislature intended or even contemplated the expansive reading advocated by the State, such that the exceptions or defenses in section 893.13 having nothing to do with penalties also would be excluded from the trafficking statute.
Indeed, the effect of the State's interpretation of the trafficking statute would extend well beyond the prescription defense at issue here. Both section 499.03(1) and section 893.13(9) shield certain persons or entities who possess and deliver drugs, such as pharmacists, medical practitioners, hospitals, law enforcement officers, and the like, from the criminal prohibitions and penalties contained in the statutes. But in some instances the section 893.13 exemptions are broader than the ones contained in section 499.03. For example, section 499.03(1)(e) exempts "[a]n officer or employee of a federal, state, or local government," whereas section 893.13(9)(e) excludes "[o]fficers or employees of state, federal, or local governments acting in their official capacity only, or informers acting under their jurisdiction." (Emphasis supplied.) If, as the State maintains, no part of section 893.13 applies to the trafficking law, informants acting under the orders of law enforcement could be prosecuted for trafficking. Law enforcement agencies, which commonly employ informers to enforce the drug possession law, would be unable to recruit them for investigations of drug trafficking.
It is impossible to fathom why the Legislature would endeavor to combat the more serious offense of drug trafficking by prescribing harsher penalties for that crime, and yet deprive law enforcement of an important weapon in that battle. Obviously, it would not; to do so would be unreasonable and ridiculous. This is yet another reason why we are obliged to reject the State's literal interpretation of the statute. See Maddox v. State, 923 So.2d 442, 447 (Fla.2006) (stating the courts will not sanction a statutory reading that would lead to unreasonable or ridiculous results); Holly, 450 So.2d at 219; Doe, 948 So.2d at 808.
The State's construction is no less unreasonable in the context of the case before us, involving the drug trafficking prosecution of a man who possessed hydrocodone that he obtained by prescription. At the time of his arrest, O'Hara had 58 Vicodin tablets in his possession, but under the State's theory he would have violated the trafficking law even if he had possessed far fewer. Section 893.135(1)(c)(1)(a) establishes a three-year minimum mandatory prison term for possession of "4 grams or more, but less than 14 grams" of hydrocodone. Under the statute, when a controlled substance is mixed with another substance in a pill, the weight of the controlled substance is deemed to be the total weight of the mixture, "including the controlled substance and any other substance in the mixture." § 893.135(6). One prescription Vicodin tablet contains 5 milligrams of hydrocodone and 500 milligrams of acetaminophen, *845 the drug sold under the brand name Tylenol. See Physicians' Drug Reference, 526 (59th ed., Thompson 2005). For purposes of the trafficking statute, then, each tablet would be deemed to contain 505 milligrams of the controlled substance. Therefore, to exceed the minimum drug trafficking threshold of four grams would require only eight of these tablets.[2]
The dosage recommended by Vicodin's manufacturer is one or two tablets every four to six hours, not to exceed eight per day. Id. at 527. If we were to accept the State's assertion that there is no prescription exception to the offense of drug trafficking by possession, then we would have to conclude that any person who leaves a pharmacy with only one day's worth of properly prescribed Vicodin in hand is guilty of drug trafficking and subject to at least a three-year minimum mandatory prison term and a fine of at least $50,000. One of the doctors who appeared at O'Hara's trial testified that in the course of his practice he had written prescriptions for up to 60 Vicodin tablets. Under the trafficking statute, that many Vicodin tablets would be deemed to contain over 30 grams of hydrocodone. According to the State's reasoning in this case, any patient who had the doctor's prescription filled was subject to a twenty-five year minimum mandatory prison term and a mandatory fine of $500,000. See § 893.135(1)(c)(1)(c) (specifying penalty for possessing 28 grams or more, but less than 30 kilograms).
Standing alone, that proposition is absurd. But it is even more so when considering that the unwitting patient's criminal "culpability" would be less if only his doctor chose to prescribe his pain medication in another, more powerful, form. A Vicoprofen tablet contains 7.5 milligrams of hydrocodone, and its recommended dosage is one tablet every four to six hours to a maximum of five in 24 hours. Physicians' Drug Reference at 529, 531. It differs from Vicodin in two other notable ways. First: instead of acetaminophen, in Vicoprofen the hydrocodone is mixed with ibuprofen, the medication sold over the counter under the brand name Advil. Id. at 529. Second, and most important: whereas a Vicodin tablet weighs 505 milligrams, the total weight of a Vicoprofen tablet is only 207.5 milligrams. Id.
As noted above, under the State's position a patient who left the drug store with 60 validly prescribed Vicoden tablets would face a minimum mandatory prison term of 25 years and a fine of $500,000. But if the 60 tablets in his possession were Vicoprofen, his minimum mandatory punishments would be fully ten years fewer and $400,000 less. See § 893.135(1)(c)(1)(b) (specifying penalty for possessing 14 grams or more, but less than 28 grams). This would be true notwithstanding that in the latter scenario the patient possessed the same number of tablets containing fifty percent more hydrocodone as in the former. For that matter, it is possible to illicitly possess as many as 19 Vicoprofen tablets without implicating the trafficking statute. But if the State is correct, a patient with only eight prescribed Vicoden tabletsfewer than half as many tablets containing less than a third as much hydrocodonewould be a drug trafficker subject to a mandatory minimum prison term of three years and a mandatory fine of $50,000. We are obliged *846 by law to reject an interpretation of the statute that would lead to such ridiculous results. See Maddox, 923 So.2d at 447; Holly, 450 So.2d at 219; Doe, 948 So.2d at 808.
Our stance in this matter is buttressed by our knowledge that in another context, also involving hydrocodone, the Legislature allowed its determination to prevent the misuse of narcotics to be tempered by its concern for the plight of Florida patients who must take these drugs to control their pain. In 2000, the Legislature removed hydrocodone from Schedule III, leaving it only as a Schedule II drug.[3] Ch.2000-320, § 2, at 3843, Laws of Fla. The effect of this legislation was to prohibit refills of prescription drugs like Vicodin. Compare § 893.04(1)(f) (prohibiting physicians from including refills on a prescription for a Schedule II controlled substance) with § 893.04(1)(g) (stating that a prescription for a Schedule III controlled substance may be filled or refilled five times during a six-month period).
Following the enactment of chapter 2000-320, numerous individuals and associations, including legislators, physicians, the Florida Board of Medicine and the Director of the State Office of Drug Control, wrote letters expressing their concern that removing hydrocodone from Schedule III posed a danger to the public because patients with chronic illnesses would be unable to obtain prescriptions that included refills. See Fla. S. Comm. on Justice-Crim, CS for SB 232 at 6 (2001) Staff Analysis (Mar. 7, 2001) (available at http:// www.flsenate. gov/data/session/ 2001/Senate/bills/ analysis/pdf/ 2001S0232.CJ.pdf); Department of Legal Affairs Emergency Rule No. 2ER00-1, 26 Fla. Admin. W. 36 (Sept. 8, 2000) (noting that the deletion of hydrocodone from Schedule III "will create an undue and unintended disruption upon the legitimate medical use of numerous medical products"). At the urging of the Florida Board of Medicine and the Florida Board of Pharmacy, the Attorney General exercised his authority under section 893.0355(2) to retain hydrocodone as a Schedule III drug. See Emergency Rule No. 2ER00-1.
In its next session, the Legislature reinstated hydrocodone as a Schedule III drug, but it made the trafficking statute applicable to either Schedule II or Schedule III hydrocodone. Ch.2001-55, §§ 1, 2, at 357-60, Laws of Fla. A Senate staff analysis of that legislation observed that in 1999 Vicodin was the fifth-most prescribed medication in the United States. It also reported that the sponsors of the 2000 legislation that removed hydrocodone from Schedule III had stated that "it was not their intent to burden patients legitimately using prescription medications containing hydrocodone." CS for SB 232 Staff Analysis at 1, 7.
That episode, albeit not directly on point, is telling: as it must, the Legislature endeavors to achieve an appropriate balance between its duty to protect the public from the illicit trade in narcotics and its duty to ensure the ability of the afflicted to obtain drugs that are critical to their well-being. It is impossible to reconcile that endeavor with the State's position about the meaning of section 893.135(1). If, as *847 the State contends, this subsection precludes prescription defenses in trafficking prosecutions, patients may not legally possess Vicodin unless their doctors write prescriptions for less than a day's recommended dosage. Any patient who needs more of the drug would be forced to refill the prescription every day. Under section 893.04(1)(g), which permits prescriptions for controlled substances to be filled or refilled a total of five times during a six-month period, the patient's ability to obtain refills would terminate in less than a week. Judging by its quick response to the public health ramifications of removing hydrocodone from Schedule III, it is unimaginable that the Legislature would endanger the public by imposing such an onerous burden as that advocated by the State in this case.
To summarize, section 499.03 and section 893.13 allow a person to legally possess either a legend drug or a controlled substance when the drug was obtained pursuant to a valid prescription. These statutes apply even when a person possesses a trafficking amount of hydrocodone. O'Hara presented evidence that the hydrocodone tablets he possessed had been prescribed by physicians and obtained from a pharmacy. Having presented evidence of his defense at trial, he was entitled to have the defense presented to the jury in an instruction. See Thomas v. State, 787 So.2d 27, 29 (Fla. 2d DCA 2001). Therefore, the trial court erred when it denied O'Hara's request for a jury instruction that it was not illegal to possess hydrocodone if it had been prescribed. Accordingly, we reverse O'Hara's conviction and remand for a new trial.
As previously mentioned, in his first trial O'Hara did not raise this issue as a basis for his motion for judgment of acquittal. He is not precluded from doing so, if appropriate, at his new trial.
Reversed and remanded for a new trial.
SALCINES and VILLANTI, JJ., Concur.
NOTES
[1] The definitional section for chapter 499 defines "person" as

any individual, child, joint venture, syndicate, fiduciary, partnership, corporation, division of a corporation, firm, trust, business trust, company, estate, public or private institution, association, organization, group, city, county, city and county, political subdivision of this state, other governmental agency within this state, and any representative, agent, or agency of any of the foregoing, or any other group or combination of the foregoing.
§ 499.003(32).
[2] Vicodin is produced in other forms and strengths. Vicodin ES tablets contain 7.5 milligrams of hydrocodone and 750 milligrams of acetaminophen. Physicians' Drug Reference at 527. Vicodin HP contains 10 milligrams of hydrocodone and 660 milligrams of acetaminophen. Id. at 528. Vicoprofen contains 7.5 milligrams of hydrocodone and 200 milligrams of ibuprofen. Id. at 529.
[3] Hydrocodone is both a Schedule II and a Schedule III drug. § 893.03(2)(a)(1)(j), (3)(c)(3)-(4). A Schedule III drug "has a currently accepted medical use in treatment in the United States." § 893.03(3). Prescription Vicodin tablets would be included in Schedule III because they contain, at the most, 10 milligrams of hydrocodone per tablet. See § 893.03(3)(c)(4) (placing hydrocodone in Schedule III if a dosage unit contains "not more than 15 milligrams" of the drug, with recognized therapeutic amounts of active ingredients that are not controlled substances).