SILBERMAN, Judge,
Concurring in part and dissenting in part.
I agree that the circuit court departed from the essential requirements of the law in ordering Adrian and Evelyn to submit to DNA testing. However, I do not agree with the majority’s reasoning or its conclusion that the circuit court, on remand, may order DNA testing under general discovery principles. The narrow question presented by this case is whether the circuit court departed from the essential requirements of the law by ordering Adrian and Evelyn to submit to DNA testing as part of the discovery process when section 760.40, Florida Statutes (2005), clearly prohibits such DNA testing without informed consent. Because I believe that the circuit court was bound by the limitations in section 760.40, I would answer that question in the affirmative and grant the writ of certiorari.
I agree with the majority that DNA testing is authorized for a determination of paternity for a person born out of wedlock under section 732.108(2)(b), Florida Statutes (2005). See § 742.12(1), Fla. Stat. (2005) (providing for DNA testing of the child, mother, and alleged fathers “[i]n any proceeding to establish paternity”) (emphasis added). However, section 760.40 imposes limitations on the court’s authority to order such DNA testing.
Section 760.40 is entitled “Genetic testing; informed consent; confidentiality; penalties; notice of use of results.” It provides in pertinent part as follows:
(2)(a) Except for purposes of criminal prosecution, except for purposes of determining paternity as provided in s. 409.256 or s. 74.2.12(1), and except for purposes of acquiring specimens from persons convicted of certain offenses or as otherwise provided in s. 943.325, DNA analysis may be performed only with the informed consent of the person to be tested\ and the results of such DNA analysis, whether held by a public or private entity, are the exclusive property of the person tested, are confidential, and may not be disclosed without the consent of the person tested.
(Emphasis added.) “DNA analysis” is defined as “the medical and biological examination and analysis of a person to identify the presence and composition of genes in that person’s body.” § 760.40(1). It also includes genetic testing and DNA typing. Id. Thus, the informed consent of the subject of DNA testing must be obtained prior to obtaining the DNA sample and conducting genetic testing or DNA typing unless one of the statutory exceptions applies. The only applicable exception in this case is the use of the DNA to determine paternity as provided in section 742.12(1).
Section 742.12 is entitled “Scientific testing to determine paternity,” and subsection (1) provides as follows:
(1) In any proceeding to establish paternity, the court on its own motion may require the child, mother, and alleged fathers to submit to scientific tests that are generally acceptable within the scientific community to show a probability of paternity. The court shall direct that the tests be conducted by a qualified technical laboratory.
*143 (Emphasis added.) This section thus authorizes a court to require a child, mother, and putative father to submit to DNA testing. Reading this statute in conjunction with section 760.40, a court is authorized to require such DNA testing on the child, mother and putative father without their informed consent. However, because section 742.12(1) does not authorize a court to require a putative sibling to submit to DNA testing, the prohibition against DNA testing without informed consent in section 760.40(2)(a) applies to putative siblings.
In this case, the guardian for Madelin properly sought an adjudication of paternity pursuant to section 732.108(2)(b) after the decedent’s death. While the circuit court was authorized by section 742.12(1) to order DNA testing of the child, the mother, and the putative father in order to make a paternity adjudication, it was not authorized to order DNA testing of others absent their informed consent as required by section 760.40(2)(a). Accordingly, the circuit court departed from the essential requirements of the law in ordering Adrian and Evelyn to submit to DNA testing as putative siblings of Madelin.
The majority devalues the privacy right at issue in this case by asserting that the intrusion on one’s privacy is minimal because the test is noninvasive and used only to compare the putative child’s DNA to that of the legitimate children. The privacy right protected by section 760.40(2)(a) is not just the right to be free from unwarranted physical intrusion, but the right to keep private one’s DNA composition.[9] The majority, under the guise of discovery rules, would allow circuit courts to order DNA testing if the testing is arguably relevant to the pending matter, thereby ignoring the legislative determination protecting an individual’s privacy rights to his or her own DNA.
I fully recognize Madelin’s entitlement to obtain relevant discovery under Florida Rule of Civil Procedure 1.280(b)(1) and the circuit court’s authority under Florida Rule of Civil Procedure 1.380 to compel a party to comply with a discovery request. However, the right to discovery is not absolute. Rule 1.280(b)(1) precludes discovery regarding any matter that is privileged. Florida law recognizes privileges created by the Florida Evidence Code, statutes, and the Florida and United States Constitutions. See § 90.501, Fla. Stat. (2005); cf. § 316.066(4), Fla. Stat. (2005) (creating a privilege for crash reports); § 766.101(5), Fla. Stat. (2005) (creating a privilege for medical review committee records). Section 760.40 effectively creates a privilege regarding DNA testing by requiring informed consent before such testing is performed and before any results of the testing are disclosed.
I cannot accept the majority’s conclusion that the purpose of section 760.40(2)(a) is to require an individual to sign a “consent” form against his or her will and under threat of sanctions by the circuit court in order to authorize DNA testing. There would appear to be no use for such a statute if DNA testing could be ordered by a court simply as part of the discovery process. Thus, the majority’s interpretation of section 760.40(2)(a) would render it meaningless, and we are not permitted to construe statutes in that manner. See Am. Home Assurance Co. v. Plaza Materials Corp., 908 So.2d 360, 367-68 (Fla.2005) (quoting Unruh v. State, 669 So.2d 242, 245 (Fla.1996)).
*144 Furthermore, we are not permitted to ignore the clear intent of the legislature to protect the privacy rights of a person to his or her DNA. The majority’s interpretation of the statute essentially inserts the qualifying phrase, “unless directed by a circuit court in the course of discovery,” into section 760.40(2)(a)’s prohibition against DNA testing without informed consent. The majority supports this interpretation by expressing concern that section 760.40(2)(a) might preclude courts from ordering DNA testing against a party’s will in certain types of cases. However, the legislature has expressly considered the circumstances under which informed consent should not be required by including exceptions within section 760.40(2)(a) itself. The majority’s reservations about the consequences of applying the statutory protections in other types of cases do not justify interpreting section 760.40(2)(a) in a manner that completely eviscerates those protections.
It is sometimes helpful to remember that statutory interpretation is not a contact sport played between the judiciary and the legislature as members of opposing teams. Statutory interpretation is an important function of the judiciary designed to facilitate the functioning of the legislature and the fulfillment of the laws and policies adopted by the legislature. The judiciary must use a degree of common sense in deciding whether the legislature’s intent is sufficiently clear that the court may imply a qualifying phrase within a statute. If there is any reasonable concern that a reading other than a strict interpretation might not comport with the legislature’s intent, the legislature should generally be required to amend the statute, if that is necessary to fulfill its actual intent.
Doe v. Dep’t of Health, 948 So.2d 803, 809 (Fla. 2d DCA 2006) (footnote omitted).
For these reasons, I would grant the petition for writ of certiorari and quash the circuit court’s order compelling Adrian and Evelyn to submit to DNA testing.

. That right may be especially important to children whose parentage may be called into question by the DNA test results.