NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


RIVERSIDE HEIGHTS                 )
DEVELOPMENT, LLC,                 )
                                  )
          Appellant,              )
                                  )
v.                                )          Case No. 2D19-918
                                  )
CITY OF TAMPA and ULELE, INC.,    )
                                  )
          Appellees.              )
_____)

Opinion filed September 11, 2020.

Appeal from the Circuit Court for
Hillsborough County; Emmett L.
Battles, Judge.

C. David Harper, Adam R. Alaee,
and Evan M. Malloy of Foley &
Lardner LLP, Tampa, for Appellant.

David E. Harvey and Kristin
Ottinger, Assistant City Attorneys,
Tampa, for Appellees.


ATKINSON, Judge.

Riverside Heights Development, LLC (Riverside), appeals a final judgment

entered in favor of City of Tampa (the City) and Ulele, Inc. (Ulele) (the Defendants) in a

declaratory judgment action brought by Riverside. Riverside argues that the trial court

erred in finding that the notice requirements for the disposal of real property under section 163.380(3)(a), Florida Statutes (2017), do not apply to a property acquired by the City prior to the formation of the community redevelopment area within which the property is located. We agree and reverse.[1]

In 1923, the City acquired the Water Works Building and the Cable Office, two adjacent buildings that are now located in the Tampa Heights Riverfront Community Redevelopment Area (CRA), which was created in 1999. On September 13, 2011, the City issued a Request for Proposals (RFP) for the acquisition and redevelopment of the Water Works Building. See § 163.380(3)(a) (requiring a municipality to give public notice and invite proposals from private redevelopers before disposing of any real property in a CRA). The RFP did not include the Cable Office.

Thereafter, the City accepted a proposal submitted by Ulele. On July 1, 2013, the City and Ulele entered into a lease agreement for an initial term of twenty years for the purpose of redeveloping the Water Works Building and operating a restaurant in that building (the Lease). The City also granted Ulele an option to purchase the Water Works Building. Additionally, the City agreed that if Ulele proposed a use for the Cable Office, the City would modify the Lease to include the Cable Office for no additional consideration. On February 28, 2017, the City and Ulele signed an amendment to the Lease, which modified the definition of the premises to incorporate the Cable Office.

Riverside is a private redeveloper in Hillsborough County and has redeveloped numerous properties within the CRA. Due to the City's failure to provide

---

[1]We decline to reach Riverside's alternative argument.

public notice of its intent to dispose of the Cable Office, Riverside claims it was denied an opportunity to submit a proposal for that property pursuant to section 163.380(3)(a). Riverside sought a judgment declaring that the Lease was void as it related to the Cable Office. In their Answer and Affirmative Defenses, the Defendants alleged that the City was not obligated to comply with section 163.380(3)(a) because the City acquired the Cable Office prior to the creation of the CRA.

Riverside then filed a motion for a judgment on the pleadings, arguing that the Defendants' defense failed as a matter of law because the notice provisions in section 163.380(3)(a) apply to "any real property" located in the CRA without regard to the date on which the City acquired the property. The Defendants filed a response in opposition to Riverside's motion and a cross-motion for judgment on the pleadings, reiterating the argument alleged in their Answer and Affirmative Defenses. After a hearing, the trial court entered an order denying Riverside's motion and granting the Defendants' motion and ultimately entered a final judgment in favor of the Defendants.[2]

A trial court's order granting a judgment on the pleadings is reviewed de novo. Syvrud v. Today Real Estate, Inc., 858 So. 2d 1125, 1129 (Fla. 2d DCA 2003) (citing Williams v. Howard, 329 So. 2d 277, 280–81 (Fla. 1976)). A trial court's construction of a statute is also reviewed de novo. A.J.R. v. State, 206 So. 3d 140, 142 (Fla. 2d DCA 2016) (citing State v. C.M., 154 So. 3d 1177, 1178 (Fla. 4th DCA 2015)). Statutory language must "be afforded its plain and ordinary meaning, giving due regard to the context within which it is used." Hampton v. State, 103 So. 3d 98, 110 (Fla.

_____

[2]After Riverside filed its complaint, the City conveyed the Cable Office to Ulele. The parties' arguments at the hearing were directed to both the Lease and the deed.

2012); O'Hara v. State, 964 So. 2d 839, 843 (Fla. 2d DCA 2007) ("[S]tatutory language . . . must be taken in context, so that its meaning may be illuminated in the light of the statutory scheme of which it is a part.").

Section 163.380 governs the "[d]isposal of property in a community redevelopment area." Under subsection (1), any municipality "may sell, lease, dispose of, or otherwise transfer real property . . . acquired by it for community redevelopment in a community redevelopment area to any private person . . . in accordance with the community redevelopment plan." § 163.380(1) (emphasis added). Under subsection (2), "[s]uch real property . . . shall be sold, leased, or otherwise transferred, or retained at a value determined to be in the public interest in accordance with such reasonable disposal procedures as any . . . municipality . . . may prescribe." § 163.380(2) (emphasis added).

Subsection (3) provides, in part, the following:

> Prior to disposition of any real property or interest therein in a community redevelopment area, any county, municipality, or community redevelopment agency shall give public notice of such disposition by publication in a newspaper having a general circulation in the community, at least 30 days prior to the execution of any contract to sell, lease, or otherwise transfer real property and, prior to the delivery of any instrument of conveyance with respect thereto under the provisions of this section, invite proposals from, and make all pertinent information available to, private redevelopers or any persons interested in undertaking to redevelop or rehabilitate a community redevelopment area or any part thereof. . . .
> The county, municipality, or community redevelopment agency may accept such proposal as it deems to be in the public interest and in furtherance of the purposes of this part. . . .
> Thereafter, the county, municipality, or community redevelopment agency may execute such contract in accordance with the provisions of subsection (1) and deliver

deeds, leases, and other instruments and take all steps necessary to effectuate such contract.

§ 163.380(3)(a) (emphasis added).

The trial court concluded that the notice requirements for the disposal of real property under subsection (3)(a) only apply to real property acquired for community development purposes. The trial court reasoned that the notice requirements do not apply to the Cable Office because it was acquired prior to the creation of the City's CRA and thus was acquired for purposes other than community redevelopment.

The trial court noted that a 2010 Attorney General's opinion supports its interpretation. See Op. Att'y Gen. Fla. 10-47 (2010). The Attorney General was asked whether a city was subject to the notice requirements of section 163.380(3)(a) where, as here, "the city leases a portion of city-owned property located within a community redevelopment area when that property was acquired prior to the creation of the community redevelopment area and was not acquired for redevelopment purposes." Id. The Attorney General acknowledged that the term "any real property" in subsection (3)(a) "is expansive enough to include any property owned by the city regardless of the date it was acquired or the use for which it was acquired." Id. Nonetheless, the Attorney General opined that "the necessity to further the purpose of the act, i.e., eliminate and prevent the development or spread of slums and urban blight, to encourage needed community rehabilitation, and to provide for the redevelopment of slums and blighted areas, would . . . limit the application of the act to real property acquired by the city for redevelopment." Id. (concluding that the notice requirements of section (3)(a) "do not apply to real property located within the city's community redevelopment area which was acquired for purposes other than community

- 5 -

redevelopment prior to the creation of the city's community redevelopment area"); see also Op. Att'y Gen. Fla. 08-21 (2008).

Reading subsections (1), (2), and (3) of section 163.380 "together to present a comprehensive scheme for directing the disposition of property acquired for community redevelopment," the Attorney General erroneously assumed the only purposes for the provisions of subsection (3) are those that relate to the provisions of subsection (1). Op. Att'y Gen. Fla. 10-47 (2010) (emphasis added). However, there could be independent and reasonable purposes for the requirement in subsection (3) to provide notice and solicit proposals prior to the disposition of all government-owned property within a CRA, even that which was not acquired for community redevelopment. Presumably, property situated within a CRA is anticipated to increase in value as it is redeveloped, underscoring the importance of transparency and competition in government contracting. Cf. § 163.340(8)(b), Fla. Stat. (2017) (listing as one factor in the definition of "[b]lighted area" the failure of "[a]ggregate assessed values of real property in the area . . . to show any appreciable increase over the 5 years prior to the finding of such conditions"); § 287.001, Fla. Stat. (2017) (recognizing "that fair and open competition is a basic tenet of public procurement" and "that such competition reduces the appearance and opportunity for favoritism and inspires public confidence that contracts are awarded equitably and economically"). But the proliferation in the judicial mind of possible purposes for which legislative language might have been enacted is one reason that courts would do well to subordinate such conjecture to the faithful application of the plain and ordinary meaning of the language itself. See Harris v.

C.I.R., 178 F.2d 861, 864 (2nd Cir. 1949) ("It is always a dangerous business to fill in the text of a statute from its purposes . . . .").

The Attorney General's interpretation disregards the plain meaning of the words of the statute, failing to properly account for the difference in language used to describe the property in subsections (1) and (3).  See Leisure Resorts, Inc. v. Frank J. Rooney, Inc., 654 So. 2d 911, 914 (Fla. 1995) (declining to "imply [a term] where it ha[d] been excluded" when the term was used in one section but not another).  If there is a way to apply the plain and ordinary meanings of the words "any" in subsection (3) and "acquired . . . for community redevelopment" in subsection (1) while giving effect to both provisions harmoniously, then this court is obligated do so.  "Where possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another."  Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So. 2d 452, 455 (Fla. 1992) (citing Villery v. Fla. Parole & Probation Comm'n, 396 So. 2d 1107, 1111 (Fla.1980)); Dep't of Health v. Bayfront HMA Med. Ctr., LLC, 236 So. 3d 466, 472 (Fla. 1st DCA 2018) ("All parts of the statute must be given effect, and . . . 'all parts of a statute must be read together in order to achieve a consistent whole.' " (quoting Searcy, Denney, Scarola, Barnhart & Shipley v. State, 209 So. 3d 1181, 1189 (Fla. 2017))).

Subsection (1) lays out the options for what a government can do with property "acquired by it for community redevelopment in a community redevelopment area"—transfer it to a private person or retain it for public use.  It requires that such transfer or retention occur after approval of the community redevelopment plan and that use of the property must be "in accordance with the community redevelopment plan."

§ 163.380(1). If the government decides to transfer it to a private person, such transferees are obligated to devote the property only to uses in the plan. Id.

Subsection (2) governs the value at which "such" property can be transferred. Consistently with subsection (1), subsection (2) indicates that such property should be transferred "at a value determined to be in the public interest for uses in accordance with the community redevelopment plan." § 163.380(2) (emphasis added). Subsection (4) allows the government to operate and maintain such property "acquired . . . for or in connection with a community redevelopment plan" for uses other than those in the community redevelopment plan, but only "temporarily . . . pending the disposition of the property." § 163.380(4).

Subsection (3), on the other hand, applies to the disposition of "any" property "in a community development area" and requires the giving of notice and soliciting of proposals prior to the transfer of such property. § 163.380(3). Notably, the criteria for a government's acceptance of such proposals in subsection (3) is more relaxed than the criteria described in subsection (1). Subsection (3) requires merely that the proposal for purchase, lease, or other transfer of "any" real property in the CRA "be in the public interest and in furtherance of the purposes of this part" (i.e., "PART III. COMMUNITY REDEVELOPMENT" of chapter 163, Florida Statutes). Id. For the property described in subsection (1), a much narrower standard applies: all private transferees of property acquired by the governing body "for community redevelopment" must devote such property "only to the uses specified in the community redevelopment plan." § 163.380(1) (emphasis added).

In other words, a governing body may acquire property in a community redevelopment area for the purpose of community redevelopment and—whether it transfers it or keeps it—the property must be used in accordance with the community redevelopment plan. On the other hand, no property that is located in a community redevelopment area can be sold without public notice and the solicitation of proposals. If such property was not acquired by the governing body for the purpose of community development, then conformity with the community redevelopment plan is not required (i.e., "use[]" of such property "retain[ed]" by the government does not have to be "in accordance with the community redevelopment plan," and private transferees of such property do not have to devote "such real property only to the uses specified in the community redevelopment plan," § 163.380(1)).

Stated otherwise, property acquired for the purpose of community redevelopment must be used in conformity with the community redevelopment plan—whether transferred to private ownership or retained for public use. And, while property within a community redevelopment area that was not acquired for the purpose of community redevelopment does not have to be put to a use specified in the community redevelopment plan, it still cannot be transferred without a public request for proposals—which proposals are evaluated based merely on whether they are in the public interest and in furtherance of the purposes of the community development statutes.

As the City and Ulele would see it, there is a fly in the ointment of this reading of subsection (3), and that is the provision (in the last sentence of that subsection) that contracts for the transfer of any property in a community

redevelopment area may be executed "in accordance with the provisions of subsection (1)." They deduce from that provision that "any real property" in subsection (3) does not really mean any; rather, it means only those properties described in subsection (1)—property acquired by the government "for community redevelopment." This does not follow. In fact, the opposite is more accordant with logic: the property described in subsection (1) is not coextensive with the property described in subsection (3); if it were, then there would be no need to specify in subsection (3) that property described therein can be conveyed by contracts executed "in accordance with the provisions of subsection (1)." Additionally, the Defendants' reading would achieve the curious result that a purchaser of any property located in a community redevelopment area (property described in section 163.380(3)) is obligated to devote the property "to uses specified in the community redevelopment plan" (a requirement in section 163.380(1))—whether such property was acquired by the government "for community redevelopment" or not.

Another way to account for the reference in subsection (3) to the "contract" provisions of subsection (1) is that property to which subsection (3) applies—"any" property in a community redevelopment area—should simply be subjected to those provisions of subsection (1) that apply to it. If the shoe fits, wear it: if the property in the community redevelopment area was acquired "for community redevelopment," then sale of "such property" must only be made "after the approval of the community redevelopment plan" and only to private persons who obligate themselves to "devote such real property only to the uses specified in the community redevelopment plan," section 163.380(1); if the property was not acquired for community redevelopment, then there are no such requirements in subsection (1) that apply.

In this way, the language in subsection (3) indicating that contracts for the transfer of property in a community redevelopment area may be executed in accordance with the provisions of subsection (1) is given effect—albeit an effect that is only practically applicable to a subset of the properties to which subsection (3) applies. Importantly, this allows application of the plain and ordinary meaning of "any" to the provision in subsection (3) requiring notice and solicitation of proposals before transfer of "any real property or interest therein in a community redevelopment area." See O'Hara, 964 So. 2d at 843 ("Whenever possible, we must give full force to all statutory provisions." (citing Doe v. Dep't of Health, 948 So. 2d 803, 808 (Fla. 2d DCA 2006))).

Thus, the last sentence of section (3) providing that sales contracts may be executed "in accordance with the provisions of subsection (1)" does not compel the conclusion that "any" does not really mean "any" in subsection (3). While application of the reference to subsection (1) to only a subset of the properties governed by subsection (3) might not be immediately intuitive, it is reasonable. And such an application would not do violence to the text of the statute, as would ignoring the plain and ordinary meaning of "any" in the phrase "any real property or interest therein in a community redevelopment area." See § 163.380(3) (emphasis added); see also State v. James, 45 Fla. L. Weekly D841 (Fla. 2d DCA April 15, 2020) (explaining that the plain meaning of statutory language must be applied where it "does not produce an absurd or patently unreasonable result"); McDougall v. Van House, 801 So. 2d 118, 121 (Fla. 2d DCA 2001) ("A construction which avoids a potential conflict between statutes is to be utilized when possible." (citing Wakulla County v. Davis, 395 So. 2d 540, 542–43 (Fla. 1981))).

- 11 -

Another indicator that "any" means "any" is the unqualified title of the statute itself: "Disposal of property in community redevelopment area." See § 163.380; see also Fitts v. Furst, 283 So. 3d 833, 837 (Fla. 2d DCA 2019) ("[T]he titles within codified statutes may be helpful in construing an ambiguous statute." (quoting Fajardo v. State, 805 So. 2d 961, 963 (Fla. 2d DCA 2001))). "[P]roperty in a community redevelopment area" presumably means any property in the area unless otherwise circumscribed by a qualifier. Section (1) contains such a qualifier—"acquired . . . for community redevelopment." Section (3) does not; it says "any."

A reading of "any real property" in subsection (3) to mean any real property is not inconsistent with a reading of "property acquired . . . for community redevelopment in a community redevelopment area" in subsection (1) to mean potentially less than any and all property in a community redevelopment area. Cf. Fla. Dep't of Envtl. Prot. v. ContractPoint Fla. Parks, LLC, 986 So. 2d 1260, 1265–66 (Fla. 2008) (advocating a reading of separate provisions of a statute in reference to each other where "a part of a statute appears to have a clear meaning if considered alone but when given that meaning is inconsistent with other parts of the same statute" (quoting Fla. State Racing Comm'n v. McLaughlin, 102 So. 2d 574, 575–76 (Fla. 1958))).

There is no reason for a court to apply anything other than the plain and ordinary meaning of "any" in subsection (3). As such, the City was required to provide notice and solicit proposals in accordance with section 163.380(3)(a) before transferring the Cable Office. We must therefore reverse the trial court's final judgment and remand for further proceedings consistent with the foregoing.

Reversed and remanded.

CASANUEVA and SILBERMAN, JJ., Concur in result only.