75 So.3d 394 (2011)
STATE of Florida, Appellant,
v.
Annette LATONA, Appellee.
No. 5D10-3966.
District Court of Appeal of Florida, Fifth District.
December 2, 2011.
Pamela Jo Bondi, Attorney General, Tallahassee, and Kristen L. Davenport, Assistant Attorney General, Daytona Beach, for Appellant.
James S. Purdy, Public Defender, and Christopher S. Quarles, Assistant Public Defender, Daytona Beach, for Appellee.
EVANDER, J.
The State appeals the trial court's order dismissing the information filed against Annette Latona. Determining that Latona's motion to dismiss was sufficient to support a dismissal as a matter of law and that the State's traverse was insufficient to raise a factual issue, we affirm.
*395 The State filed an information charging Latona with one count of possession of oxycodone and two counts of possession of morphine. The arrest affidavit explained that the charges were based on the fact that three prescription pill bottles, with H.H.'s full name on them, were found in Latona's purse by the police after a traffic stop involving Latona. Two of the prescription pill bottles contained morphine and the other, oxycodone. When questioned by police, Latona stated that she was H.H.'s home health care nurse, that she lived at H.H.'s residence, and that she held H.H.'s pills in her purse because she was afraid that he may take too many of them and possibly overdose.
Pursuant to rule 3.190(c)(4) of the Florida Rules of Criminal Procedure, Latona filed a motion to dismiss the information alleging a "prescription defense." Specifically, the motion alleged that Latona was in lawful possession of the oxycodone and morphine found in her purse at the time of her arrest because the medications had been lawfully prescribed to H.H. and she was, by virtue of an executed durable power of attorney, H.H.'s attorney-in-fact. The power of attorney, a copy of which was attached to the motion, expressly authorized Latona, inter alia, to "hold . . . all intangible and tangible property . . . owned by [H.H.]." It further provided that the instrument was to be construed and interpreted as a general durable power of attorney and that the "enumeration of specific powers herein is not intended to, nor does it, limit or restrict the general powers herein granted to [Latona]."
In response, the State filed a sworn traverse pursuant to rule 3.190(d). In its traverse, the State admitted that the medications found on Latona had been lawfully dispensed to H.H. pursuant to a prescription from a physician. The State further admitted that Latona had been designated by H.H. as his attorney-in-fact and that the executed power of attorney was in full force and effect at the time of Latona's arrest. However, the State disputed that Latona was holding the prescribed medications on behalf of H.H. based on the following:
[Officer] Mechtel states that he interviewed [H.H.], and [H.H.] denied that any person should have possession of his medications.
Significantly, there was no language in the traverse reflecting that H.H. had ever informed Latona that, notwithstanding the language contained in the executed power of attorney, she was not authorized to possess his medications. Furthermore, there was no allegation by the State that Latona had either used or attempted to sell H.H.'s medications.
Section 893.13(6)(a), Florida Statutes (2009) permits an individual to legally possess a controlled substance where the controlled substance was obtained pursuant to a valid prescription. See O'Hara v. State, 964 So.2d 839, 841 (Fla.2d DCA 2007). The prescription defense is available to the prescription holder and any individual authorized by the prescription holder to hold the medications on his or her behalf. McCoy v. State, 56 So.3d 37, 39 (Fla.1st DCA 2010).
In the instant case, the State argues there is a disputed issue of fact as to whether Latona exceeded the scope of her authority granted by the power of attorney. We disagree. Pursuant to the express provisions of the power of attorney, Latona was authorized to hold any and all of H.H.'s propertywhich would include his medications. While H.H. could revoke any or all of the powers he granted to Latona, any such revocation would only be effective as of the time that Latona received notice of the revocation. Florida-Georgia Chem. Co. v. Nat'l Labs., Inc., 153 *396 So.2d 752, 754 (Fla.1st DCA 1963) (revocation of agency becomes operative as to agent from time agent has actual notice thereof). Here, there was nothing in the record reflecting that H.H. had ever informed Latona that she was no longer authorized to hold his medications. Absent such assertion, H.H.'s alleged statement to Officer Mechtel denying that any person should have possession of his medications constituted an incorrect conclusion of law, not a statement of fact. Accordingly, no disputed issue of material fact was created by the State's traverse.
AFFIRMED.
LAWSON, J., concurs.
PALMER, J., dissents, with opinion.
PALMER, J. dissenting.
I respectfully dissent.
Latona filed a motion to dismiss pursuant to rule 3.190(c)(4) of the Florida Rules of Criminal Procedure. In State v. Bell, 882 So.2d 468 (Fla.5th DCA 2004), our court explained:
A rule 3.190(c)(4) motion should be granted only when the trial court determines that the most favorable construction of the facts does not establish a prima facie case of guilt; if there is any evidence upon which a reasonable jury could find guilt, a motion to dismiss must be denied. . . . Moreover, on a motion made pursuant to rule 3.190(c)(4), the State is not only entitled to receive the most favorable construction of the evidence but also to have all inferences resolved against the defendant.
Id. at 470.
Latona sought dismissal based on a prescription defense. She attached several documents to her motion, including a copy of a Durable Power of Attorney for Management of the Assets of H.H., as well as a copy of a card which alerted health care providers that H.H. had executed a Durable Power of Attorney for health care. Latona did not attach a copy of the Durable Power of Attorney for health care to her dismissal motion.
The Durable Power of Attorney for Management of the Assets of H.H. reads, in relevant part, as follows:

ARTICLE 3AGENT'S POWERS
* * *

Powers over money and property. To forgive, request, demand, sue for, recover, collect, receive, hold all such sums of money, debts, dues, commercial paper, checks, drafts, accounts, deposits, legacies, bequests, devised, notes, interests, stock certificates, bonds, dividends, certificates of deposit, annuities, pensions, profit sharing, retirement, social security, insurance and other contractual benefits and proceeds, all intangible and tangible property and property rights and demands whatsoever, liquidated or unliquidated, now or hereafter owned by me, or due, owing, payable or belonging to me or in which I have or may hereafter acquire an interest.
(Emphasis added.) The majority concludes that this provision expressly authorized Latona to "hold any and all of H.H.'s property"; therefore, she was authorized to hold his prescription medications until H.H. notified her that he had revoked such authorization. I disagree.
Florida case law is well-settled that powers of attorney are strictly construed and that the scope of an agent's authority is limited to what the principal has specifically authorized the agent to do. Dingle v. Prikhdina, 59 So.3d 326, 328 (Fla.5th DCA 2011); Stalley v. Transitional Hosps. Corp. of Tampa, Inc., 44 So.3d 627, 630 (Fla.2d DCA 2010); Crawford v. DiMicco, 216 So.2d 769, 772 (Fla.4th DCA 1968). *397 As such, powers of attorney will be "closely examined in order to ascertain the intent of the principal." Kotsch v. Kotsch, 608 So.2d 879, 880 (Fla.2d DCA 1992). Accord DeBueno v. Castro, 543 So.2d 393, 394 (Fla.4th DCA 1989).
In my view, the most favorable construction of the evidence, and inferences arising therefrom, lead to the conclusion that there was a disputed issue of fact concerning whether H.H. had expressly authorized Latona to hold his medications since H.H. told the police that no one was authorized to possess his medications and Latona did not attach a copy of H.H.'s Durable Power of Attorney for health care to her dismissal motion. The Durable Power of Attorney which was provided by Latona expressly applied to the management of H.H.'s assets, not to the management of his health care. Accordingly, I would reverse.