GROSS, J.
After a jury trial, Andrew Ramirez was convicted of trafficking in hydroeodone and possession of cocaine with intent to sell. We reverse the trafficking conviction because the failure to charge the jury on a “prescription defense” constituted fundamental error in a case where a question from the jury should have highlighted the absence of the instruction for the trial court and defense attorney.
Armed with a search warrant, fifteen SWAT team members forcibly entered and secured a home owned by Ramirez’s mother where they found Ramirez and his girlfriend asleep in a bedroom. On a nightstand next to the bed where the couple had been sleeping, a detective found an ID card belonging to Ramirez and a pill bottle, prescribed to Ramirez’s mother, containing fourteen hydroeodone tablets. The prescription had been filled six months prior to the search and the mother had a valid prescription for fifteen pills.
In a second room, likely used for storage, officers found a bag of cocaine on a television stand, another small bag of cocaine in a cabinet, a digital scale with cocaine residue on it, and baking soda, commonly used to mix with cocaine. Officers also found mail in the second room addressed to Ramirez; no belongings attributable to any other person were found in the room. According to two detectives, Ramirez said that he took the hydroeodone pills from his mother for his own use, but he was not selling them.
In the defense case, Ramirez denied making this statement. Rather, he testified that the, detectives relentlessly badgered him about whether or not he was taking the pills, so he told them to “put down whatever you want” in the police report.
Addressing the cocaine and scale found within the home, Ramirez testified that the cocaine was in his brother’s room and he was otherwise unaware of its presence. The mail addressed to him that was found inside the room was old and just happened to be there.
The mother testified that three of her sons lived in the home that was searched. Each brother had his own room, and each frequently came in and out of the home to record rap music. As for the hydroeodone pills, the mother stated that she received a valid prescription after injuring her back during a slip and fall incident. As a result, she always carried her pill bottles with her since her back frequently flared up. Because she resided elsewhere, she was uncertain how her pill bottle got to the home used by her sons; she assumed she left it there during one of the many times she stopped by to clean for her sons.
*174 Ramirez testified that he and his girlfriend had forgotten to pay the electric bill at his girlfriend’s house, so the electricity had been shut off. Therefore, the night before Ramirez’s arrest, they were forced to relocate to his mother’s house. When they arrived at the house at about 1 to 2 a.m., Ramirez saw that his mother had left the pills in an open area of the house. Since his two brothers also lived at the home and frequently invited guests over to record rap music, Ramirez took the pills into his own room to safeguard them until his mother returned.
During closing argument, the prosecutor argued that her obligation was merely to prove the four elements of trafficking in hydrocodone contained in the standard jury instruction quoted several paragraphs below:
To prove the crime of trafficking in illegal drugs, the State must prove the following four elements beyond a reasonable doubt, four elements, nothing more, nothing less.
(Emphasis added). The prosecutor preemptively attacked the anticipated defense claim that the pill bottle belonged to his mother, arguing:
Now, did he knowingly possess a certain substance?
Well, he testified that he had the bottle in his hand, he knew it was there. Now, whether you believe that the mom left it there or he took it from the mom, that’s obviously a question for you to determine.
Did he knowingly possess it?
It was in his nightstand next to his ID, right next to where he was sleeping.
It is difficult to determine the precise nature of defense counsel’s closing argument other than exploration of the theme, “This isn’t fair.” The essence of the argument appears to have been that Ramirez was entitled to temporarily possess the pills, and thus should be acquitted of the trafficking charge, since his mother had a viable prescription and he was not using them for an illegal purpose. Defense counsel conceded that the pills were located “next to [Ramirez’s] bed” but argued instead that it would be illogical for Ramirez not to keep the pills in the second room with the cocaine if he were selling them. Moreover, the fact that there were still fourteen of the fifteen pills still in the prescription bottle showed, in defense counsel’s opinion, that Ramirez was not taking or selling the drugs.
The trial court instructed the jury on the four elements of the offense of trafficking in hydrocodone as follows:
To prove the crime of Trafficking in Illegal Drugs, the State must prove the following four elements beyond a reasonable doubt:
1. [Ramirez] knowingly possessed a certain substance.
2. The substance was hydrocodone or a mixture containing hydrocodone.
3. The quantity of the substance involved was 4 grams or more, but less than 14 grams.
4. [Ramirez] knew that the substance was hydrocodone or a mixture containing hydrocodone.
The court did not instruct the jury on any affirmative defense, and defense counsel did not ask for an instruction that would have placed the general “fairness” theme of his closing in the context of a recognized defense.
Even if Ramirez’s trial counsel was ineffective, the jury perceived that something was unfair in the law as instructed. In a lengthy, detailed written question, the jury asked, if it found that the State had proven the four elements of trafficking beyond a reasonable doubt, whether it
*175 therefore must find the Á guilty? Or in the alternative, can this Honorable Court please advise if this jury, pursuant to the aforementioned analysis, has properly considered all pertinent issues surrounding this individual charge?
In response, the trial judge told the jurors that they “must rely on the evidence presented at the trial, as well as the instructions on the law, and base [their] decision on that.” Defense counsel did not object or request any additional instruction on the law.
Fundamental error occurred in this case because the court failed to instruct on a prescription defense — the defense that obviously applied to the trafficking charge.[1] A trial court’s omission of a jury instruction is “subject to the contemporaneous objection rule, and, absent an objection at trial, can be raised on appeal only if fundamental error occurred.” State v. Delva, 575 So.2d 643, 644 (Fla.1991) (citing Castor v. State, 365 So.2d 701 (Fla.1978); Brown v. State, 124 So.2d 481 (Fla.1960)). Where a court has failed to in struct on an affirmative defense, fundamental error occurs where a jury instruction is “so flawed as to deprive defendants claiming the defense ... of a fair trial.” Smith v. State, 521 So.2d 106, 108 (Fla.1988). “This is a rigorous standard, for fundamental error occurs only in those rare cases such as ‘where the interests of justice present a compelling demand for its application.’ ” Smith v. State, 76 So.3d 379, 385 (Fla. 1st DCA 2011)(quoting Ray v. State, 403 So.2d 956, 960 (Fla.1981)).
Since the charge of trafficking may be proven through possession of a certain amount of a controlled substance, “[an affirmative] prescription defense is ... available to those who have a valid prescription written directly on their behalf for the pills in their possession.” McCoy v. State, 56 So.3d 37, 39 (Fla. 1st DCA 2010) (citations omitted). Specifically, section 893.13(6)(a), Florida Statutes (2009), provides,
It is unlawful for any person to be in actual or constructive possession of a controlled substance unless such controlled substance was lawfully obtained from a practitioner or pursuant to a valid prescription or order of a practitioner while acting in the course of his or her professional practice or to be in actual or constructive possession of a controlled substance except as otherwise authorized by this chapter.
(Emphasis added); see also Wagner v. State, 88 So.3d 250, 252 (Fla. 4th DCA 2012) (“A valid prescription is a complete defense to trafficking and a defendant is entitled to a jury instruction on the defense.” (citing O’Hara v. State, 964 So.2d 839, 847 (Fla. 2d DCA 2007))).
The prescription defense is not limited to the person holding a valid prescription, but may also be asserted by “any individual authorized by the prescription holder to hold the medications on his or her behalf.” State v. Latona, 75 So.3d 394, 395 (Fla. 5th DCA 2011) (citing McCoy, 56 So.3d at 39). This extension derives from sections 465.003(6)[2] and 893.04(2)(a),[3] *176 Florida Statutes (2009), which allow pharmacists to dispense prescription drugs to a patient’s agent.[4] McCoy, 56 So.3d at 39.
In the cases developing this area of law, the applicable legal theory is that the “agent” in possession of the controlled substance received express authority from the prescription holder. See, e.g., Ayotte v. State, 67 So.3d 330, 331 (Fla. 1st DCA 2011)(finding the prescription defense available to a person holding his girlfriend’s pills at her request); McCoy, 56 So.3d at 39 (finding the same where a wife was holding her husband’s pills on his behalf). However, express authority is not required to create a valid agency relationship: rather, the prescription holder may provide his or her agent with implied au thority to act, or in this case hold the pills. See, e.g., Masuda v. Kawasaki Dockyard Co., 328 F.2d 662, 664-65 (2d Cir.1964). In such circumstances, implied authority may be inferred from the facts and circumstances surrounding the parties’ relationship. See Thomkin Corp. v. Miller, 156 Fla. 388, 24 So.2d 48, 49 (1945) (observing that an “agent’s authority ... may be inferred from the related facts of the case”); Beardslee v. Fla. Elections Comm’n, 962 So.2d 390, 392 (Fla. 5th DCA 2007) (stating that agency is a relationship that “may also be inferred from past dealings between the parties”); Restatement (Second) of Agency § 7 cmt. c (1958). Here, had the jury been properly instructed, it could have found that Ramirez had the implied authority to safeguard the pills for his mother until he could return them. Any other application of the law would turn a prescribed controlled substance into a hot potato if the drugs were accidentally left somewhere, with the potential to turn an unsophisticated possessor into a drug trafficker.
The prescription defense was Ramirez’s primary defense to the trafficking charge. Where a jury is not instructed on the law of a crucial defense, a “defendant is deprived of a fair trial if the error divests the defendant of his or her ‘sole, or ... primary, defense strategy’ and that defense is supported by evidence adduced at trial that could not be characterized as ‘weak.’ ” McCoy, 56 So.3d at 40 (quoting Martinez v. State, 981 So.2d 449, 455-57 (Fla.2008)). The justification for this rule follows logic. “An affirmative defense does not concern itself with the elements of the offense at all; it concedes them. In effect, an affirmative defense says, Tes, I did it, but I had a good reason.’ ” State v. Cohen, 568 So.2d 49, 51-52 (Fla.1990). Therefore, if a jury is not instructed as to a defendant’s affirmative defense, and that affirmative defense remains the defendant’s sole or primary defense to the charge, then the jury, confining itself to the instructions provided by the court, would be required to convict.
For example, in McCoy, much like the case at hand, the defendant argued for reversal of her conviction for trafficking in hydrocone on the grounds that the trial court’s failure to sua sponte instruct the jury on her prescription defense constituted fundamental error. 56 So.3d at 40. At trial, “[t]he defendant did not deny that she possessed the drug, but she claimed that she was merely carrying the drug in her purse for her husband, who held a valid prescription.” Glovacz v. State, 60 So.3d 423, 425 (Fla. 1st DCA 2011) (discussing the facts of McCoy).
*177 In reversing, the McCoy court held that the defendant satisfied the two elements of Martinez, finding that the prescription defense “constituted [the defendant’s] only defense to the charge and there was substantial, albeit conflicting, evidence concerning the defense[.]” McCoy, 56 So.3d at 41. Under these circumstances, the court found that “[w]hile the State introduced contradictory evidence refuting the [prescription] defense, the jury was never instructed they had a choice to accept [the defendant’s] defense.” Id. at 40. This error was compounded by the prosecutor’s statement during closing argument that it was not “a defense for th[e] defendant to have the pills because her husband has a prescription” and that “anyone can be charged with trafficking for having pills in their possession.” Id.
Likewise, in Ayotte, the defendant’s “sole theory of innocence” for challenging his charge of trafficking in hydrocodone was that “he was holding the pills for his girlfriend, who had a valid prescription^]” 67 So.3d at 331. In reversing, the first district, citing McCoy, found dispositive the “failure by all participants and the standard jury instructions to acknowledge the statutory exceptions for possession pursuant to a valid prescription, failure by the state to refute [the defendant’s] role as his girlfriend’s agent, and the prosecutor’s argument that possession alone was sufficient to convict.” Id. at 332; see also, e.g., Glovacz, 60 So.3d at 425-26 (finding fundamental error for failure to instruct on a prescription defense where defendant held her husband’s prescribed pills in her purse at his request).
In this case, Ramirez’s primary defense to trafficking in hydrocodone was that he was legally holding his mother’s prescribed pills for safekeeping. Although disputed by the State’s evidence, this contention was hardly “weak,” as the seized pills were prescribed to Ramirez’s mother, she claimed to carry the pills with her because her back frequently flared up, and fourteen of the fifteen pills were still in the bottle. In closing, the prosecutor emphasized that the case was limited to whether the State had proved the four elements of trafficking, “nothing more, nothing less.” In a remarkable turn of events, it was the jury, and not the judge or trial counsel, that recognized that something was lacking in the court’s instructions on the law, as indicated by its question asking whether the jury “must ” convict if the State proved the four elements of trafficking. This question should have been sufficient to alert the court and defense counsel that something was amiss in the instructions— namely, the failure to apprise the jury of its ability to apply the prescription defense to the case.
For these reasons, we reverse the conviction for trafficking in hydrocodone and remand for a new trial.
Ramirez also challenges several improper statements made by the prosecutor during the closing argument, to which his trial counsel did not object. To obtain a reversal for these errors, Ramirez must establish fundamental error. See Mendoza v. State, 964 So.2d 121, 133 (Fla.2007)). Improper comments rise to the level of fundamental error only when they
either deprive the defendant of a fair and impartial trial, materially contribute to the conviction, [are] so harmful or fundamentally tainted as to require a new trial, or [are] so inflammatory that they might have influenced the jury to reach a more severe verdict than that it would have otherwise.
Walls v. State, 926 So.2d 1156, 1167 (Fla.2006)(quoting Spencer v. State, 645 So.2d 377, 383 (Fla.1994)); see also Kilgore v. State, 688 So.2d 895, 898 (Fla.1996)(stat-ing that fundamental error “reach[es] *178 down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.” (quoting Delva, 575 So.2d at 644-45)).
Here, the prosecutor suggested that the testimony of the “15 SWAT guys” would have been cumulative to other testimony and that certain lost pictures would have corroborated “every single thing” that a detective said. These statements were clearly improper. See, e.g., Tillman v. State, 647 So.2d 1015, 1015-16 (Fla. 4th DCA 1994)(“[T]he prosecutor’s representation to the jury of additional corroborating evidence which he saw no need to present to them was highly improper and prejudicial, necessitating reversal.” (citing Thompson v. State, 318 So.2d 549, 552 (Fla. 4th DCA 1975)); see also Landry v. State, 620 So.2d 1099, 1102 (Fla. 4th DCA 1993). However, in the context of this case, these arguments did not rise to the level of fundamental error.
We affirm the conviction for possession of cocaine with intent to sell, reverse the conviction for trafficking in hydrocodone, and remand for a new trial.
MAY, C.J., and GERBER, J., concur.

.This is one of those rare cases where ineffective assistance of trial counsel is “apparent on the face of the record.” Grant v. State, 864 So.2d 503, 505 (Fla. 4th DCA 2004) (citations omitted). However, we do not decide the case on this ground because Ramirez does not argue this basis on appeal.

. See § 465.003(6), Fla. Stat. (2009)(defining "dispense" as "the transfer of possession of one or more doses of a medicinal drug by a pharmacist to the ultimate consumer or her or his agent. ”)(emphasis added)).

. See § 893.04(2)(a), Fla. Stat. (2009) ("The pharmacist may dispense the controlled substance, in the exercise of her or his profes *176 sional judgment, when the pharmacist or pharmacist’s agent has obtained satisfactory patient information from the patient or the patient's agent.") (emphasis added)).

. Agent is defined as "[o]ne who is authorized to act for or in place of another.” McCoy, 56 So.3d at 39 (quoting Black's Law Dictionary 68 (8th ed.2004)).