LEWIS, J.
Appellant challenges his conviction and sentence for trafficking in hydrocodone. The sole issue presented on appeal is whether the trial court committed fundamental error in failing to give the “prescription defense” instruction to the jury. Because the failure to instruct the jury on the “prescription defense” under the circumstances of this case does not rise to the level of fundamental error, we affirm Appellant’s conviction and sentence.
Appellant was pulled over in March of 2011 for driving with a cracked windshield. During the traffic stop, a drug-detection dog alerted to the presence of narcotics. Appellant and his girlfriend exited the vehicle. Per the testimony of a detective at the stop, when Appellant’s girlfriend was asked if she had anything on her person that would get her into trouble, Appellant’s girlfriend informed Appellant that the police were going to search her, then stated that Appellant made her do it, and pulled out a baggie of hydrocodone pills that were stuffed down her pants. The officer at the stop testified that he also observed Appellant’s girlfriend pull the baggie of pills from her pants and heard her say that Appellant gave her the pills when the traffic stop was initiated.
The detective at the stop also testified that Appellant said that he did not have a prescription for the pills, knew it was illegal to possess the pills, and purchased the pills from an individual in the valley. Appellant also admitted to the detective that he previously had a prescription for hydro-codone, but did not have a prescription for the pills in his possession. Another detective, with the narcotics division, testified that he also interviewed Appellant at the county jail and Appellant again admitted that he did not have a prescription for the pills and that he bought all 33 pills retrieved during the stop from an individual in the valley. Appellant told the second detective that he gave his girlfriend the pills to hide when he was pulled over. Appellant’s girlfriend was also interviewed at the county jail by the second detective. She informed the second detective that Appellant obtained the pills from an individual down in the valley and Appellant gave her the pills to hide when they were being pulled over by police.
At trial, a video recording of Appellant and his girlfriend taken while they were in the backseat of a patrol car at the time of Appellant’s arrest was played to the jury. On the recording, Appellant asked his girlfriend, “Why didn’t you just hand them back to me, Baby, instead of telling them about it?” Appellant’s girlfriend indicated that she did not know when she should *487 have given the pills back to Appellant. In response, Appellant said, “Before we got pulled over. Why didn’t you just tell me to carry them? Because they don’t never touch my nuts. They don’t never touch your crotch area. They come up your leg and that’s it.” Additionally, after being informed by his girlfriend that the police were arresting her because they wanted to ask her more questions about where the pills came from, Appellant said, “I told them from my boy over across town.”[1]
During his defense at trial, Appellant and his girlfriend both testified and denied that they told the police that the hydroco-done pills were purchased illegally in the valley. Appellant’s girlfriend claimed Appellant asked her to put the pills in her purse, but she stuck the pills down her pants because she was afraid that they would get crushed in her purse. Appellant testified that the pills were in a baggie and not in a prescription bottle because their dog had chewed up the entire bottom of the bottle. Appellant also testified that he told his girlfriend to keep the pills in her purse for safety and because he did not want the police to think that he was doing anything illegal. Regarding the video recording, Appellant claimed that he was merely attempting to get the pills back from his girlfriend to explain that they were not illegal. He denied asking his girlfriend to hide the pills. He claimed that his girlfriend voluntarily handed the pills over to the officers, and they explained to the officers that the pills were not illegal, but had been prescribed.
Appellant submitted prescription records from two pharmacies that reflected that he had filled prescriptions for over 300 hydrocodone pills from August 2010 to November 2010. The last prescription filled, in November 2010, was for 28 pills. Appellant also admitted his medical records into evidence. One of the records was from a December 2010 ER visit that occurred one month after Appellant’s last prescription was filled and reflected that Appellant told the ER personnel that he had been off of hydrocodone for over a week and needed a refill of pills. Appellant also reported that he had gone to the ER for the purpose of obtaining a refill, and he had been taking hydrocodone daily for over 20 years.
During closing arguments, the prosecutor argued that although Appellant had told the officers that he had a prescription for hydrocodone in the past, he also admitted he did not have a prescription for the pills that were found. Additionally, in rebuttal, the prosecutor stated:
Now, ladies and gentlemen, the State is not contesting the fact that the defendant had a prescription for Lortab, or hydrocodone, at one point in time. However, the State has proven today, beyond a reasonable doubt, that the pills that were in his possession on March 16th of 2011 ... were not prescribed to *488 him and they were illegal to possess under' Florida law.
The prosecutor went on to focus on Appellant’s statements on the video recording and asserted that someone who had a “valid prescription” would not concoct a scheme to conceal prescription pills from law enforcement by putting them down someone’s pants. The jury found Appellant guilty as charged with trafficking in hydrocodone. This appeal followed.
Pursuant to section 893.13(6)(a), Florida Statutes (2010), it is unlawful for any person to be in actual or constructive possession of a controlled substance unless the substance was “lawfully obtained from a practitioner or pursuant to a valid prescription or order of a practitioner....” Appellant asserts on appeal that it was fundamental error not to instruct the jury on the prescription defense. Appellant further contends that because the prescription defense was his sole defense, reversal for a new trial is required under the facts of this case. We disagree.
The Florida Supreme Court has made it clear that the failure to give a jury instruction on an affirmative defense does not constitute per se fundamental error. Martinez v. State, 981 So.2d 449, 455 (Fla.2008). Instead, “[w]here the challenged jury instruction involves an affirmative defense, as opposed to an element of the crime, fundamental error only occurs where a jury instruction is ‘so flawed as to deprive defendants claiming the defense ... of a fair trial.’ ” Id. (quoting Smith v. State, 521 So.2d 106, 108 (Fla.1988)). “Additionally, the fundamental error doctrine ‘should be applied only in rare cases where a jurisdictional error appears or where the interests of justice present a compelling demand for its application.’ ” Id. (quoting Smith, 521 So.2d at 108) (emphasis in original).
The language from Martinez has been relied upon and applied by this Court in three separate opinions dealing with the failure to give the prescription defense and resulted in reversals based upon the fundamental error doctrine. See Ayotte v. State, 67 So.3d 330 (Fla. 1st DCA 2011); Glovacz v. State, 60 So.3d 423 (Fla. 1st DCA 2011); McCoy v. State, 56 So.3d 37 (Fla. 1st DCA 2010). We, however, conclude that the three prior cases are factually dissimilar to the facts of this case.
In McCoy, we, in interpreting Martinez, held that “[a] defendant is deprived of a fair trial if the error divests the defendant of his or her ‘sole, or ... primary, defense strategy’ and that defense is supported by evidence adduced at trial that could not be characterized as ‘weak.’” 56 So.3d at 40 (quoting Martinez, 981 So.2d at 455-57) (emphasis added). The defendant in McCoy claimed that she was holding the pills for her husband who had a valid prescription. 56 So.3d at 38. The prescription defense may be asserted by “any individual authorized by the prescription holder to hold the medications on his or her behalf.” State v. Latona, 75 So.3d 394, 394 (Fla. 5th DCA 2011) (citing McCoy, 56 So.3d at 39). In concluding that the failure to instruct the jury on the prescription defense amounted to fundamental error, we focused on the fact that, not only did the jury fail to receive an instruction on the prescription defense, but the prosecutor specifically told the jury:
They want you to say, so what, they’re her husband’s pills, of course she can have them, but you know what you won’t hear, when the Judge reads you the law, you won’t hear that she had a right to have them because, after all, Hydroco-done is a controlled substance.
[[Image here]]
You will not hear from the judge that it is a defense for this defendant to have *489 the pills because her husband has a prescription. You will not hear that. If you do not hear that, then there is no defense in the law for this defendant to have the pills.
McCoy, 56 So.3d at 40. We concluded that the case presented one of those rare instances where fundamental error had occurred because the prescription defense constituted the defendant’s sole defense, there was substantial, although conflicting, evidence regarding the defense, and the prosecutor had made an “egregiously incorrect” argument regarding the defense. Id. at 41.
We again addressed the failure to instruct the jury on the prescription defense in Glovacz. There, the defendant did not deny possessing hydrocodone, but claimed to have a valid prescription. 60 So.Sd at 424. The State did not dispute the defendant’s claim that he had a valid prescription for the pills. According to the State’s evidence, the defendant had sold the drugs to an undercover officer. Id. The defendant, on the other hand, claimed that she did not receive any money, believed the undercover officer was in pain, and expected the undercover officer to give her back the same amount of pills when she obtained her own prescription. Id. Relying on our opinion in McCoy, we again found fundamental error, focusing on the fact that the prescription defense was not given and the prosecutor had suggested in closing that possession alone could support a conviction for trafficking. Id. at 425-26.
Finally, our most recent opinion addressing the failure to instruct the jury on the prescription defense is Ayotte. Similar to McCoy, the defendant in Ayotte claimed that he was holding the pills for his girlfriend, who had a valid prescription. 67 So.3d at 331. The arresting officer testified that he observed the defendant showing the pills to another patron, and the defendant confessed that he was selling the drugs to pay for drinks. Id. The defendant denied trying to sell the pills and claimed that they fell out of his pocket while he was reaching for his cigarettes. Id. In closing, the State emphasized only the elements of the trafficking charge and reminded the jury that it had a duty to uphold the law. Id. We held that the facts were analogous to McCoy and Glovacz, noting that there was “conflicting evidence regarding a transaction of the controlled substance, failure by all participants and the standard jury instructions to acknowledge the statutory exceptions for possession pursuant to a valid prescription, failure by the state to refute Appellant’s role as his girlfriend’s agent, and the prosecutor’s argument that possession alone was sufficient to convict.” Id. at 332.
Although the prescription defense was Appellant’s sole theory of defense, as was the situation in our three prior cases, those cases, as previously noted, are factually dissimilar to the facts of this case. In those cases, the State did not dispute the existence of a valid prescription for the drugs at issue. Instead, our three prior cases all turned on the conflicting testimony of the defendant versus the police officer regarding whether the defendant was selling prescribed drugs or whether the defendant, an agent for the actual prescription holder, was taking the prescribed drugs. Unlike our three prior cases, here, the State did dispute that the 33 pills were from a valid prescription and introduced testimony from three officers that Appellant had admitted to illegally purchasing the pills.
Furthermore, in Martinez, the Florida Supreme Court, after reviewing the complete record of the case, concluded that the defendant’s claim of self-defense was “extremely weak.” 981 So.2d at 456. Specifically, the supreme court pointed to incon *490 sistencies in the defendant’s testimony when compared with his prior statements to the police and found that the case did not present “a compelling demand for the application of the fundamental-error doctrine.” Id. at 456-57.
Similar to Martinez, Appellant’s own evidence weakens his theory of defense. The medical record evidence submitted by Appellant during trial extremely diminished his claim that the 83 pills at issue were leftover prescriptions, the last of which was filled in November 2010 for 28 pills, four months prior to his arrest. Specifically, the medical record from Appellant’s December 2010 ER visit, which occurred approximately three months prior to his arrest, reflects that he reported being off hydrocodone for over a week and was seeking a refill. Appellant reported that he took hydrocodone daily for over 20 years and his reason for going to the ER was to obtain a refill of his medication. Appellant’s statement to his doctors that he was taking hydrocodone daily for over 20 years, was off hydrocodone for over a week, and was seeking a refill, extremely weakens any claim that the 33 pills in his possession at the time of his arrest, four months after his last prescription for only 28 pills was filled, were from his prior prescriptions. At trial, Appellant did not submit any additional prescription records to establish that a prescription for hydro-codone was written at this ER visit or filled at any point after this visit. Additionally, the jury was played a video recording of Appellant and his girlfriend taken while they were in the backseat of a police car at the time of Appellant’s arrest where Appellant asked his girlfriend why she did not hand the pills back to him, indicating that he would have put the pills down his pants to conceal them as the police “never touch your crotch area.” When informed by his girlfriend that the officers wanted to ask her more questions about where the drugs came from, Appellant said, “I told them from my boy across town.” This video recording contradicted Appellant’s testimony that he wanted his girlfriend to hand over the pills to the officers or that he had a valid prescription for the 33 pills at issue.
As such, given these facts, along with the testimony from the detectives that Appellant admitted at the time of his arrest and in a later interview that he purchased the pills illegally and he no longer had a valid prescription, we conclude that the evidence of a valid prescription for the 33 pills in question was weak at best and does not present a compelling demand for applying the fundamental error doctrine. If we were to accept the dissent’s position that fundamental error occurred in this case and that we are invading the province of the jury by determining whether the evidence at issue is “weak,” we would essentially be saying, contrary to the supreme court’s reasoning in Martinez and our prior reasoning, that fundamental error always occurs in a case where a defendant raises the prescription defense and presents some evidence in support of the defense but where defense counsel fails to request the pertinent instruction. The standard by which the dissent judges this case is not the standard by which we are to judge whether fundamental error occurs in a case, regardless of whether it involves the prescription defense.
Furthermore, unlike our three prior cases, this case does not merit the application of the fundamental error doctrine as the prosecutor in this case did not ignore the prescription defense during closing arguments or incorrectly inform the jury that it should not consider Appellant’s prescription evidence. In all three of our prior cases, the prosecutor either incorrectly informed the jury that it should not consider the prescription defense or in *491 formed the jury that possession alone was sufficient to convict. Here, unlike our three prior cases, the jury heard the prosecutor, at multiple points during his closing and rebuttal, make arguments regarding why it should reject Appellant’s claim that the pills at issue were from his prior prescriptions. The prosecutor did not tell the jury not to consider Appellant’s evidence of prescriptions, but directed its attention to evidence to establish that the pills at issue were not from his prior prescriptions.
In contrast to our prior opinions on this issue, Appellant’s defense was supported by evidence that can only be characterized as weak and the prosecutor did not make an egregiously, incorrect argument regarding this defense. Accordingly, we do not find a compelling demand to apply the fundamental error doctrine under the facts of this case and we therefore affirm Appellant’s conviction and sentence.
AFFIRMED.
RAY, J., concurs; CLARK, J., dissents with opinion.

. We note that the court reporter's transcript of the video recording only denotes Appellant saying, "Before we got pulled over. Why didn’t you just hold on to it? (Unintelligible) They don't never touch your crotch area.” In closing and rebuttal, however, the prosecutor summarized the evidence from the video recording and Appellant’s statements were much more extensive than what was transcribed by the court reporter. The prosecutor informed the jury that the video recording was evidence, the video would be going back into the jury deliberation room, and the jury could watch it as many times as it wanted. Since the video recording was admitted into evidence as State's Exhibit 2 and is contained in the record on appeal, we have independently reviewed the video recording. On the video recording, Appellant is clearly intelligible and can unmistakably be heard saying the statements quoted in this opinion.