# Third District Court of Appeal

## State of Florida

Opinion filed February 25, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D13-106
Lower Tribunal No. 09-29542
_____

**Amadeo Valls,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Bronwyn C. Miller, Judge.

Michelle Walsh, for appellant.

Pamela Jo Bondi, Attorney General, and Jeffrey R. Geldens, for appellee.

Before SALTER, EMAS and LOGUE, JJ.

SALTER, J.

Amadeo Valls appeals his convictions and concurrent life sentences for first degree murder and armed burglary. The unusual personal and legal relationships

among the defendant, the victim, and the owner of the residence that was the site of the incident justified a jury instruction that was requested by the defense, but opposed by the State and denied by the trial court. For the reasons which follow, we reverse Valls' convictions and sentences, and we remand the case for a new trial.

Facts and Procedural History

Valls and the woman who owned the residence in question had known each other for thirteen years or more. There was testimony that the two had a romantic relationship at some point. Valls remained friendly with the owner's daughter, and he entered into a verbal arrangement to rent a room at the owner's residence. His occupancy commenced in August 2009, about three weeks before the incidents and shooting that gave rise to the criminal charges against him. His initial cash payment of $500.00 was to entitle him to occupancy through mid-October of 2009.

Consistent with prior transactions in which the owner had rented a room to individuals, she gave Valls a key and granted him access to the common areas of the home, including the front and back yard, kitchen, living room, and a bathroom. There was a gate across the driveway between the residence and the entry from the street, but it was unlocked, and renters were allowed to park in the driveway.

Not long after Valls moved into the room, the owner observed objectionable behavior by him and asked him to leave the rented room. He agreed to leave, but

refused to return his key or remove his property immediately. Valls moved to another rental, but continued to visit the owner and her home to retrieve his property little by little.

The victim, John Purvis, had also had a previous romantic relationship with the woman who owned the residence, and he had lived for a time with her in the home. Later, they broke up and Purvis moved away. But after Valls moved out of the home, the owner invited Purvis to stay with her again. Valls learned of this, and was allowed by the owner to stop by the house to have some beer with Purvis. The two men stayed up late, and Valls slept in the spare room. Upon learning this the next morning, the owner asked Valls to leave her home. Valls became angry, and the owner changed the locks to the home. The owner took no other steps to terminate the oral tenancy or to remove Valls' remaining property from the home.

On the date of the shooting (September 7, 2009), Valls and his brother visited the home to remove more of his property. The owner let them in. Valls and Purvis got into a heated conversation. There was conflicting testimony as to whether Valls made a veiled threat to Purvis, and whether Purvis ordered Valls to leave the home.

That night, Valls asked his brother to drop him off near the home so that he could pull the oil plug out of Purvis's car "to teach him a lesson." Valls carried his loaded handgun with him. Purvis's dogs, which were in or around the home,

3

began barking. Purvis looked outside and saw a light under his car. Purvis walked out of the home with his gun, just as Valls' brother was walking toward the house. The brother testified that he heard someone say "hey," and then heard multiple gunshots from different guns. Ultimately, Valls was shot in the wrist, and Purvis died of multiple gunshot wounds. Crime scene investigators were unable to conclude which of the two men initiated the gunfire.

Valls was charged with first degree murder and armed burglary. At trial, the defense argued that Purvis fired the first shot, that Valls returned fire in self-defense, and that Valls had a right to enter the residential property and driveway. If accepted by the jury, a finding in this case that Valls had a right to enter the property would have required a not guilty verdict on the armed burglary charge, even if Valls was guilty of some lesser crime in vandalizing Purvis's car. Conviction of a lesser crime would not have barred Valls' claim of self-defense.

The defense initially submitted a proposed special jury instruction regarding the particulars of landlord-tenant law, including a landlord's recovery of possession, the surrender and abandonment of leased premises, and the written notices required to terminate a month-to-month tenancy. The trial court rejected the special instruction, concluding that it would unfairly highlight evidence favorable to Valls.

4

Counsel and the court then considered the instructions relating to the elements of burglary. The State asked the court to omit paragraph three of Standard Criminal Jury Instruction 13.1 regarding the burglary charge. That paragraph and the commentary pertaining to it states:

> *Give element 3 only if defendant meets his or her burden of production that he or she had an invitation or license to enter, or that the premises were open to the public. See State v. Hicks, 421 So. 2d 510 (Fla. 1982), and State v. Waters, 436 So. 2d 66 (Fla. 1983).*
>
> **3. [(Defendant) was not [licensed] [invited] to enter the [structure] [[conveyance].] [The premises were not open to the public at the time of the entering.]**

The defense specifically requested the inclusion of paragraph three based on evidence that Valls' oral lease, rent payment, and prior visits to the property gave him a license or right of entry, and that the driveway was open to visitors. The trial court removed paragraph three, concluding that paragraph one of the instruction was sufficient to present the "ownership" issue to the jury.[1] Regarding self-defense, the court instructed the jury that the use of deadly force was not justifiable if the defendant was attempting to commit, committing, or escaping after the commission of, a burglary.

---

[1] Paragraph one states that an element of the crime of burglary that must be proven beyond a reasonable doubt is that "(Defendant) entered a [structure][conveyance] owned by or in the possession of (person alleged)." Fla. Std. Jury Instr. (Crim.) 13.1.

5

During closing argument, the State argued to the jurors that they were required to follow the instructions issued by the court, and that "there's not going to be any law in there about landlord/tenant, and she had to evict him, and she had to do this and that. This is not landlord/tenant court, this is a court of criminal law…." The State told the jurors that the defense was contesting the elements of burglary so intently because "if he committed a burglary, he doesn't get self-defense, so they got to get off the burglary, got to give the defendant a right to be there, got to say he should have been there, because if not, it's a burglary, and he doesn't get self-defense."

During deliberations, the jury sought clarification on the differences between burglary and criminal mischief. The court responded that criminal mischief is a lesser included offense of burglary and offered to re-read the instructions. Thereafter, the jury returned verdicts of guilt on each of the charges. Valls was sentenced to concurrent life sentences, and this appeal followed.

Analysis

At the outset, we reject each of the issues on appeal raised by Valls other than his argument relating to the elimination of paragraph three from the standard instruction on burglary. The inclusion of that paragraph would have required the jury, in order to convict Valls on the burglary charge, to find that he did not have a

6

license or other right to enter the residential driveway in the moments before the shootings.

A defendant is entitled to a jury instruction on his theory of defense that is recognized by law and which is supported by any evidence presented. Rodriguez v. State, 396 So. 2d 798 (Fla. 3d DCA 1981). Both elements are present in this case.

One of the established defenses to burglary is a defendant's entitlement, or license, to enter the property. State v. Hicks, 421 So. 2d 510 (Fla. 1982). The right to be on the premises extends to persons renting the premises. Anderson v. State, 356 So. 2d 382, 384 (Fla. 3d DCA 1978). That claim of right was the theory sought to be presented here--Valls' initial, prepaid rental months had not expired as of the date of the shooting, the verbal rental agreement had not been terminated as provided by law, and he still had property in the house. Even after the locks were changed, Valls was again allowed entry by the homeowner. The theory was supported by the testimony of the homeowner and Valls' brother. This is not a case, as in Dreisch v. State, 436 So. 2d 1051 (Fla. 3d DCA 1983), in which there was no evidence in the record relating to the proposed defense and instruction.

Here, as in Bryant v. State, 102 So. 3d 704 (Fla. 1st DCA 2012), the defendant presented evidence supporting a defense of consent to enter the residential property.[2] That defense, if accepted by the jury, would serve as a

defense to the burglary charge and remove a statutory bar to Valls' assertion of self-defense regarding the murder charge.

The State argues that any infirmity created by eliminating paragraph three from the standard burglary instruction was cured by an instruction that the jury could consider the "totality of the circumstances" in determining whether the homeowner had a superior possessory interest to any possessory interest claimed by Valls. The State also argues that any issue regarding "license" or invitation to enter the property was not preserved by Valls.

We disagree. The charge conference colloquy relied upon by the State for that argument related to the self-defense instructions rather than those detailing the elements of burglary. Defense counsel adequately preserved a specific request, overruled by the court, for the inclusion of paragraph three of the standard burglary instruction. The jury's request for clarification regarding the difference between burglary and criminal mischief underscores the significance of the burglary instruction requested, versus the instruction given, in the context of this unusual record.

<u>Conclusion</u>

---

[2] In <u>Bryant</u>, the defense of consent was asserted to a claim of burglary in which the defendant "kicked in the back door and entered the apartment" in which the victim resided. <u>Id.</u> at 705. In the present case, Valls did not enter the residence itself to commit the alleged crimes. The actions in question occurred in the driveway and yard surrounding the home.

Valls' right of entry, or lack of any right to enter the driveway and yard of the residence, was a critical aspect of this case, relating not only to the burglary charge, but also to his theory of defense regarding the murder charge. A critical instruction relating to that issue was deleted, depriving Valls of a fair trial regarding both charges. Ramirez v. State, 125 So. 3d 171, 176 (Fla. 4th DCA 2013).

Valls' convictions and sentences are reversed and remanded for a new trial.