939 So.2d 204 (2006)
PAMELA CARVEL, as voluntary limited guardian for AGNES CARVEL, Appellant,
v.
BETTY GODLEY, as Co-Trustee of The Agnes Carvel 1991 Trust, LAWRENCE NEWMAN, as Co-Trustee of the Agnes Carvel 1991 Trust, ETHEL G. REDDY, BANK OF NEW YORK TRUST COMPANY OF FLORIDA, and THE THOMAS AND AGNES CARVEL FOUNDATION, Appellees.
No. 4D05-203.
District Court of Appeal of Florida, Fourth District.
October 11, 2006.
Michael A. Dribin of Broad and Cassel, Miami, for appellant.
Matthew Triggs and Stephanie Reed Traband of Proskauer Rose LLP, Boca Raton, and Hal Neier of Friedman Kaplan Seiler & Adelman LLP, New York, for Appellee-Betty Godley and Lawrence Newman.
Juan C. Antunez of Stokes McMillan & Maracini, P.A., Miami, and Steven J. Fink of Orrick, Herrington & Sutcliffe, LLP, New York, for Appellee-The Thomas and Agnes Carvel Foundation.
STONE, J.
Pamela Carvel, personal representative of the estate of Agnes Carvel (interchangeably "Pamela" or "the estate"), appeals two orders: (1) an order granting defendants/counterplaintiffs' motion for summary judgment on their counterclaim seeking judicial approval of their accountings, and (2) an order compelling payment of initial out of pocket attorney's fees but denying payment for future submissions. The appellees, Betty Godley and Lawrence Newman, are the co-trustees of The Agnes Carvel 1991 Trust (trust). We reverse.
This appeal represents one small portion of a complex body of litigation between these and other parties, here and in New York. The issue before this court is one of first impression: whether a personal representative has standing to claim for a trust accounting as a beneficiary or just as a creditor, where the settlor and the estate are, essentially, the same party.
Timeline of instruments/conveyances, proceedings:
Ice cream magnate Thomas Carvel predeceased his wife Agnes in 1990. The couple was childless. Prior to his death, they executed mutual wills and a reciprocal agreement that restricted subsequent modifications and conveyances. The wills named the Tom and Agnes Carvel Foundation as residuary beneficiary. Thinking her first will was lost, Agnes executed a second will in 1990 with no changes. In 1991, Newman's office prepared the trust documents for the revocable trust at issue here, and Agnes transferred substantial assets to fund it. The first section of the trust stated:
The Trustees shall retain such property, IN TRUST, for the following purposes:
(a) To pay any part or all of the income and such sums from or any part or all of the principal of the trust as the Trustees, in their discretion, from time to time determine for any reason whatsoever to, for, or on behalf of the Grantor. Any income not so paid shall annually be added to principal.
(b) On the death of the Grantor, to pay her funeral expenses, debts and the expenses of administering her estate, and to dispose of the remaining income and principal of the trust, including any property received by the trust as a result of the Grantor's death pursuant to her will or otherwise, as provided in the other articles of this agreement.
The third section allowed the trustees to distribute the remaining trust res to the foundation after payment of income to Agnes for life and payment of all of her funeral expenses, debts, and expenses of administering her estate. The trust's tangible personal property was to be distributed to Agnes' relatives and friends.
Agnes made a third will in 1995, which was substantially different from her other wills and which named a different entity as residuary beneficiary, contrary to the estate plan she and her husband had initiated together.
Agnes' niece, Pamela, as her voluntary guardian, originally brought the instant action in Florida court, in September 1995, seeking a trust accounting, damages for breach of fiduciary duty, removal of trustees, and injunctive relief. Her grounds were that the trust was paying no income to Agnes who was still alive, the trustees had been taking excessive commissions, had mismanaged trust funds and provided no accountings to Agnes, and made unsubstantiated distributions.
The trustees filed a counterclaim, seeking judicial approval of accountings made for the period of 1991 through 1994, releasing and discharging the trustees from any and all liability. Because the voluntarily submitted accountings addressed the main count of her complaint, in December 1995, Pamela moved for voluntary dismissal of her complaint without prejudice. This left her a counterclaim defendant in the only pending action in Florida. Pamela filed her answer, affirmative defenses, and objections to the counterclaim in January 1998, expanding the timeframe of accountings sought to 1996.
Agnes passed away in 1998. Litigation surrounding the Carvel estates continued both in Florida and New York, challenging the validity of the reciprocal wills agreement between Tom and Agnes. In Florida, the trustees filed a motion for summary judgment as to their counterclaim. In the motion, the trustees stated that Pamela had asserted objections only to the 1991  1995 accountings, a statement rebutted by Pamela's inclusion of 1996 in her answer. Filing accountings up to the end of 2003 concurrently with this motion, the trustees asked that these be approved. More responses and replies were filed; Pamela's answer expanded the timeframe of objected-to accountings to all past, present, and future distributions.
Three motions were heard at a hearing in November 2004: Pamela's motion to compel payment of attorney's fees, and the trusts' motions for summary judgment and for a procedure to expedite determination and systematic payment of outstanding claims and obligations of the trust.
Counsel for the trust argued Pamela's lack of standing. The foundation's attorney stated that each of Pamela's requests for expenses must be "carefully scrutinized," showing detailed time records and services rendered, despite the fact that the very accountings for which approval was sought include none of this detail on the expense side. Another wrinkle was the request of counsel for the ancillary administrator of Agnes' New York estate, who asked that his client be exempted from any claims procedure the trial court might impose. In other words, only Pamela, the domiciliary executrix, should have to succumb to the trial court's restrictions on the trust-mandated payment of estate expenses.
Pamela's attorney reiterated that all Pamela was asking was to reserve the right, if the estate expenses exceeded the monies still held in trust, "to look back at the Trust accountings for the purposes of determining whether there were inappropriate distributions and payments made in derogation of the rights" given to the estate by the trust instrument.
The trial court entered its order granting the summary judgment approval of the accountings from 1991 through the end of 2003, and another, compelling payment of initial out-of-pocket attorney's fees but denying payment of future submissions. A third order, establishing a procedure for the expeditious determination of claims against the trust, is not at issue in this appeal.
Standing to maintain objections or assert claims for accountings of the trust
"Generally, one has standing to sue when he or she has a sufficient interest at stake in the controversy which will be affected by the outcome of the litigation." Provence v. Palm Beach Taverns, Inc., 676 So. 2d 1022, 1024 (Fla. 4th DCA 1996); Brown v. Firestone, 382 So. 2d 654, 662 (Fla. 1980). The trust instrument clearly and unambiguously lists payment of Agnes' debts at time of death and her estate claims and expenses as one of the two stated purposes of the trust. This provision is not at the discretion of the trustees. As a result, the estate, while not an income or residual beneficiary, is an intended beneficiary. The foundation's remainder interest is contingent because it is predicated upon the existence of property left in the trust after the specific condition precedent is satisfied. See TeGrotenhuis v. Rice, 744 So. 2d 1057, 1058 (Fla. 4th DCA 1999).
"The question of whether a contract was intended for the benefit of a third person is generally regarded as one of construction of the contract. The intention of the parties in this respect is determined by the terms of the contract as a whole, construed in the light of the circumstances under which it was made and the apparent purpose that the parties are trying to accomplish." Moyer v. Graham, 285 So. 2d 397, 402 (Fla. 1973). We know the purpose of the trust; it tells us in express terms. A known beneficiary is owed the same duty and is entitled to the same remedy as the party to a contract. First Am. Title Ins. Co. v. First Title Serv. Co. of the Fla. Keys Inc., 457 So. 2d 467, 473 (Fla. 1984); DeMay v. Dependable Ins. Co., 638 So. 2d 96, 97 (Fla. 2d DCA 1994). Based on these general principles, the estate has standing to call for an accounting, just as Agnes herself would have.
This result is in accord with analogous principles, such as that intended third party beneficiaries of testamentary documents have standing to bring legal and accounting malpractice actions if they are able to show "that the testator's intent as expressed in the will is frustrated by the negligence of the testator's attorney." Hare v. Miller, Canfield, Paddock & Stone, 743 So. 2d 551, 553 (Fla. 4th DCA 1999); Espinosa v. Sparber, Shevin, Shapo, Rosen, and Heilbronner, 612 So. 2d 1378, 1380 (Fla. 1993); Passell v. Watts, 794 So. 2d 651, 652 (Fla. 2d DCA 2001); Kinney v. Shinholser, 663 So. 2d 643, 647 (Fla. 5th DCA 1995).
Further, section 731.201(21), Florida Statutes, defines an interested person, for the purposes of wills and trusts, as "any person who may reasonably be expected to be affected by the outcome of the particular proceeding involved. In any proceeding affecting the estate or the rights of a beneficiary of the estate, the personal representative of the estate shall be deemed an interested person." So Pamela, as Agnes' personal representative, has standing in any proceeding affecting the estate's rights. In Barley v. Barcus, 877 So. 2d 42 (Fla. 5th DCA 2004), the Fifth District held that a widow/personal representative had standing, as an interested person, to file a motion for appointment of a trustee of a residuary trust for which she was not a trustee but a contingent remainder beneficiary.
Section 733.707(3), Florida Statutes, mandates payment of estate expenses by a revocable trust when the estate's funds are insufficient:
Any portion of a trust with respect to which a decedent who is the grantor has at the decedent's death a right of revocation, as defined in paragraph (e), either alone or in conjunction with any other person, is liable for the expenses of the administration and obligations of the decedent's estate to the extent the decedent's estate is insufficient to pay them as provided in s. 733.607(2).
Here, the trust was revocable. Even had the trust instrument been silent, the trust would have borne the responsibility of payment to the extent that the estate has no money to pay. Section 733.607(2), Florida Statutes, referenced in the statute above, states "the personal representative is entitled to payment from the trustee of a trust described in s. 733.707(3), in the amount the personal representative certifies in writing to be required to satisfy the insufficiency." The record reflects that written demand for payment was provided to the trustees.
Propriety of summary judgment
Summary judgment is only appropriate in the absence of issues of material fact. Real Estate World Fla. Commercial, Inc. v. Piemat, Inc., 920 So. 2d 704, 706 (Fla. 4th DCA 2006). Relevant factual issues remaining in dispute in the case are whether or not the trust has sufficient funds available to pay the estate's claims as required by the decedent, whether or not Pamela has submitted written claims to the trust, and whether these have been paid. These disputes alone are sufficient to prevent summary judgment.
Going further, the trial court listed lack of standing and mootness as the legal reasons for denying Pamela's objections. However, the estate/Pamela had standing. The record also reflects that she did not waive her objections.
In its order granting the summary judgment approval of the accountings from 1991 through the end of 2003, the trial court stated that Pamela's answer applied only to accountings through 1995. The record shows that her subsequent pleadings make clear her ongoing objection, predicated on the need to preserve trustee accountability and to first pay estate claims, prior to distribution to the foundation.
The order's effect on the estate is significant because judicial approval effectively defeats any trustee accountability. The estate's interest, as intended beneficiary of a condition precedent, is superior to that of the foundation as remainderman.
The trust must be administered as written and intended. We reverse the summary judgment approval of the accountings with instructions to utilize the trial court's ordered procedure, recognizing the interests of all beneficiaries as described in this opinion, to resolve all outstanding estate claims. The estate's ongoing attorney's fees are to be subject to the same procedure.
POLEN and FARMER, JJ., concur.
Not final until disposition of timely filed motion for rehearing.