NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

In re Guardianship of Leon Bloom, )
an incapacitated person. )
 )
_____ )
 )
MARSHALL BLOOM, individually, )
 )
        Appellant, )
 )
v. )    Case No. 2D16-2985
 )
DOROTHY B. BLOOM, individually, )
and ROBERT M. ELLIOT, as Trustee of the )
Leon Bloom Revocable Living Trust u/a/d )
11/18/1988, as Restated on 10/22/2009. )
 )
        Appellees. )
_____ )

Opinion filed May 24, 2017.

Appeal from the Circuit Court for Sarasota
County; Charles E. Williams, Judge.

James L. Essenson, Barbara J. Welch, and
Matthew J. Kelly of Law Firm of James L.
Essenson, Sarasota, for Appellant.

Allan F. Baily of Law Offices of Baily &
Baily, P.A., Sarasota, for Appellee Dorothy
B. Bloom.

No appearance for Appellee Robert M.
Elliott, as Trustee of the Leon Bloom
Revocable Living Trust u/a/d 11/18/1988,
as Restated on 10/22/2009.

LUCAS, Judge.

Marshall Bloom, a beneficiary and former personal representative of the late Leon Bloom's estate, challenges the circuit court's order denying his motion to recover his attorney's fees. The circuit court correctly construed the limits of our mandate from an earlier appeal and rejected Marshall's[1] "common fund rule" argument for recovery of his fees but then erroneously concluded that his fee motion asserted no statutory basis for the court to consider. In fact, it did. Thus, while we can affirm most of the determinations the circuit court has thus far made, we must reverse the circuit court's order so that the court may rule on the remaining argument presented in the fee motion.

I.

In 1988, Leon executed a trust naming his wife, Dorothy Bloom, as a secondary beneficiary and Robert Johnson as the trust's trustee. When he began to sense that Leon's health and acuity may have been in decline, Mr. Johnson filed a guardianship proceeding in 2014, in which he sought to have Leon's nephew, Marshall, appointed as emergency temporary guardian of Leon's person and property. Both Leon and Mr. Johnson passed away in 2015 while Leon's guardianship proceeding was still pending. At the time of Leon's death, Dorothy had pending in the guardianship proceeding an unresolved claim for reimbursement from Leon's trust for funds she alleged she had used to care for her husband. From this claim, a flurry of litigation

---

[1]Solely for ease of reference, we will refer to the various Bloom family members in this opinion by their first names, rather than their common surname.

ensued between Leon's family members and their attorneys, mostly revolving around who could represent what and whom.[2]

After Mr. Johnson's death, Marshall, as the personal representative of Leon's estate, moved to be substituted in the guardianship proceeding as the petitioner in order to challenge Dorothy's claim. The circuit court granted Marshall's motion for substitution on October 23, 2015. Marc J. Soss, Esq., the successor trustee of Leon's trust, then filed a petition for writ of certiorari with this court on November 11, 2015, seeking to quash the order granting the substitution of Marshall as the petitioner. On March 23, 2016, in case number 2D15-4864, this court issued a per curiam order dismissing Mr. Soss's certiorari petition. In re Guardianship of Bloom, 189 So. 3d 769 (Fla. 2d DCA 2016) (table decision). In addition to dismissing the petition, our court also granted Marshall's motion for appellate attorney's fees in case number 2D15-4864. While granting entitlement, our order remanded the matters of the amount and appropriate source of those fees for the circuit court's ultimate determination.

Shortly before Mr. Soss began pursuing this unsuccessful certiorari petition, Marshall, through his attorney, James L. Essenson, Esq., filed a motion in the circuit court to disqualify Mr. Soss as trustee and appoint an independent trustee over Leon's trust.[3] The circuit court agreed with Marshall and granted the motion to disqualify Mr. Soss as trustee on April 7, 2016. Attorney Robert Elliott was then appointed in Mr. Soss's stead as the trustee of Leon's trust.

_____

[2]It does not appear from the record before us that Dorothy's claim has ever been resolved.

[3]There was no argument advanced below or on appeal that the guardianship proceeding was an improper forum to resolve this trust dispute.

- 3 -

Thus, in these early rounds of litigation, Marshall had two preliminary successes: the first, this court's order dismissing the certiorari petition challenging his substitution in Leon's guardianship proceeding; the second, the circuit court's order disqualifying the trustee of Leon's trust. Marshall then sought an award of his attorney's fees for the latter victory by filing a motion and a memorandum of law in the circuit court in which he posited three bases for recovery. First, Marshall argued that this court's prior fee award in the dismissed certiorari petition somehow constituted a finding that Mr. Essenson's services had benefitted Leon's estate, which, somehow, encompassed his efforts to disqualify Mr. Soss as trustee. As Marshall put it in his memorandum before the circuit court, since this court granted his entitlement to fees in the certiorari proceeding, a proceeding which enabled Mr. Essenson to maintain an objection to Mr. Soss's service as trustee, then "*a fortiori*, the Essenson firm is entitled to fees and costs for prosecuting" the disqualification motion, "which [was] clearly a benefit to the trust." According to Mr. Essenson, our prior determination of entitlement to appellate fees in the certiorari proceeding became "the law of the case," so that all of Mr. Essenson's work going forward must be deemed a benefit to Leon's trust. Second, Mr. Essenson posited that he should be awarded his fees under the "common fund" theory of recovery, a common law claim for attorney's fees found in equitable jurisprudence. As his third basis, Mr. Essenson argued that he was entitled to attorney's fees under section 736.1005(1), Florida Statutes (2015), which provides that "[a]ny attorney who has rendered services to a trust may be awarded reasonable compensation from the trust."

On June 8, 2016, the circuit court denied Marshall's motion for fees associated with disqualifying Mr. Soss. In its order denying the motion, the circuit court dispensed with Mr. Essenson's first argument out of hand: "the Essenson Firm's argument [is] unavailing, as the Essenson Firm reads the Second District's mandate much broader than the narrow issue on appeal." In apparent reference to Marshall's common fund argument, the circuit court "decline[d] to award attorney's fees as a matter of equity." Finally, the court determined that there was no statutory basis for Mr. Essenson to recover his fees.

Marshall now appeals this order.

II.

Our jurisdiction to review the probate order before us is a preliminary point we must address. On January 1, 2012, Florida Rule of Appellate Procedure 9.170 took effect. Subsection (b) of the rule begins:

> Except for proceedings under rule 9.100 and rule 9.130(a), appeals of orders rendered in probate and guardianship cases shall be limited to orders that finally determine a right or obligation of an interested person as defined in the Florida Probate Code.

The subsection continues by listing those orders that finally determine a right or obligation, which "include, but are not limited to," twenty-four separately described categories. Amongst the twenty-four categories of final, appealable orders listed in the rule, we find (b)(23), orders that "award attorneys' fees or costs." Here, however, the circuit court's order denied Marshall's motion for attorney's fees and so is, quite obviously, not one that could be fairly read to "award" anyone's fees or costs. See, e.g., *Award,* Black's Law Dictionary (10th ed. 2014) (defining the verb "award" as "[t]o grant

by formal process or by judicial decree").  Other provisions within subsection (b) provide for review of orders that, for example, "determine a motion," or "grant or deny" a petition, making the selection of the word "award" in (b)(23) all the more conspicuous by its contrast.

Nevertheless, we are satisfied that an order denying attorney's fees or costs for an interested person remains an appealable order following the passage of rule 9.170.  Rule 9.170 generally describes appealable probate and guardianship orders as those "that finally determine a right or obligation of an interested person" under the probate code.  This language mirrors the defining language that was in the rule's predecessor, rule 9.110(a)(2), which itself was merely a restatement of former Florida Rule of Probate Procedure 5.100—a deliberate repetition, according to the Florida Appellate Court Rules Committee's 1996 amendment note, because rule 9.110(a)(2) was "not intended to change the definition of final order for appellate purposes."  Fla. R. App. P. 9.110 committee notes (1996 amend.).  Thus, the traditional rule that a probate order is sufficiently final for appellate review when "judicial labor" has ended as to the issue the order addresses appears to remain intact following rule 9.170's passage, just as it had when rule 9.110 was enacted.  See Dempsey v. Dempsey, 899 So. 2d 1272, 1273 (Fla. 2d DCA 2005) ("Rule 9.110(a)(2) 'does not abrogate prior case law holding that a party's right of appeal arises when there is a termination of judicial labor on the issue involved as to that party.' " (quoting In re Estate of Walters, 700 So. 2d 434, 435 n.1 (Fla. 4th DCA 1997))); see also Armstrong v. Exceptional Child Ctr., Inc., 135 S. Ct. 1378, 1386 (2015) ("[W]hen 'judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute' is

presumed to incorporate that interpretation." (quoting <u>Bragdon v. Abbott</u>, 524 U.S. 624, 645 (1998))); <u>State v. Losada</u>, 175 So. 3d 911, 914 (Fla. 4th DCA 2015) (applying the prior-construction canon of interpretation). While the inclusion of a list of appealable probate and guardianship orders was a novel development when rule 9.170 was enacted, it must be remembered that the list's prefatory text, "include, but are not limited to," signals a nonexclusive listing. See <u>Pro-Art Dental Lab, Inc. v. V-Strategic Grp., LLC</u>, 986 So. 2d 1244, 1257 (Fla. 2008) ("[T]he term 'including' is not one of all-embracing definition, *but connotes simply an illustrative application of the general principle*." (alteration in original) (quoting <u>Fed. Land Bank of St. Paul v. Bismarck Lumber Co.</u>, 314 U.S. 95, 100 (1941))); <u>Carrithers v. Cornett's Spirit of Suwannee, Inc.</u>, 93 So. 3d 1240, 1241 (Fla. 1st DCA 2012) (observing that rule 9.170 "provides a non-exclusive list of 24 categories of probate and guardianship orders that are appealable"). In itself, then, this list of categories merely illustrates the kinds of probate and guardianship orders that are considered appealable; the rule's text leaves in place what had been the traditional formulation of finality for appealable orders in probate and guardianship proceedings.

Applying that construction of rule 9.170, we conclude that the order denying attorney's fees here ended the judicial labor needed to adjudicate that issue. See <u>Fabing v. Eaton</u>, 941 So. 2d 415, 417 (Fla. 2d DCA 2006) ("Generally, an order denying a motion for attorney's fees is a final, appealable order when that order ends the judicial labor as to that portion of the case."). And it is beyond dispute that Marshall was an interested party as defined under the probate code, both as a former personal representative at the time the fees were incurred and as a current beneficiary of Leon's

estate.  See § 731.201(23), Fla. Stat. (2014); Wheeler v. Powers, 972 So. 2d 285, 287-88 (Fla. 5th DCA 2008); Carvel v. Godley, 939 So. 2d 204, 208 (Fla. 4th DCA 2006). Accordingly, we have jurisdiction to consider the appeal of this order, an order we review de novo. [4]  See Country Place Cmty. Ass'n, Inc. v. J. P. Morgan Mortg. Acquisition Corp., 51 So. 3d 1176, 1179 (Fla. 2d DCA 2010) ("[W]here . . . the circuit court's determination of entitlement to attorney's fees is based on a conclusion of law concerning the interpretation of a statute or contractual provision, we employ a de novo standard of review.").

III.

A.

Marshall asserted three potential bases for recovery of his attorney's fees in connection with the disqualification of Mr. Soss as the trustee of Leon's trust.  We can dispense with two of them in short order.  First, with regard to this court's prior order awarding attorney's fees in connection with Mr. Soss's unsuccessful certiorari petition, the circuit court put it well when it rejected Marshall's assertion that his victory in that prior matter entitled to him to an award of fees in a subsequent matter: Marshall simply read this court's mandate in the prior proceeding "much broader than the narrow issue on appeal" actually was.  The scope of this court's mandate—and its award of attorney's fees—in case number 2D15-4864 extended no further than the fees that were incurred

---

[4]Our jurisdictional conclusion would also appear to align with recent decisions that have addressed the substantive merits in appeals of orders denying motions or petitions to recover guardians' fees.  See, e.g., In re Guardianship of Beck, 204 So. 3d 143, 153 (Fla. 2d DCA 2016) (reviewing the denial of petitions to recover attorney's fees and costs); Karr v. Vitry, 135 So. 3d 372, 373 n.1 (Fla. 5th DCA 2014) (concluding that an order denying a ward her guardian's fees was appealable under rule 9.170).

- 8 -

in litigating the issues that were presented in that proceeding (which, again, revolved around the propriety of Marshall's substitution in Leon's guardianship proceeding). Cf. FL-Carrollwood Care, LLC v. Gordon, 72 So. 3d 162, 165 (Fla. 2d DCA 2011) ("[A] trial court lacks authority to deviate from the terms of the appellate court's instructions on remand."). The circuit court was prohibited from extending the reach of our order and mandate beyond those issues, and so we can readily affirm that aspect of the circuit court's order without further discussion. Cf. Marine Midland Bank Cent. v. Cote, 384 So. 2d 658, 659 (Fla. 5th DCA 1980) (holding that the trial court erred by entering order awarding attorney's fees beyond scope of mandate and stating that "[w]hen a case is appealed and the appellate court acts by issuing its mandate, the trial court must follow the dictate of the mandate and should not stray from it").

As to the second argued basis, Marshall's contention that he is entitled to compensation of his attorney's fees under a "common fund" theory of recovery, here as well, we find no cause to disturb the circuit court's ruling.[5] Whether or to what extent Marshall's efforts removing Mr. Soss as the trustee actually conferred a benefit of any appreciable value to the trust was, as the circuit court observed in its order, "within the court's discretion to find." It found he was not entitled to recover his attorney's fees on that basis. Marshall has not explained, and we fail to see, how that discretion was in any way abused here, and so we affirm that ruling in the order as well.

---

[5]See, e.g., Shriner v. Dyer, 462 So. 2d 1122, 1124 (Fla. 4th DCA 1984) (holding that beneficiaries of a trust were entitled to recover their attorney's fees and costs for successfully removing a trustee who had mismanaged the trust's assets under the "common fund rule," and explaining that "[t]he common fund rule serves to award attorney's fees 'from a fund or estate which has been benefitted by the rendering of legal services' " (quoting Estate of Hampton v. Fairchild-Fla. Constr. Co., 341 So. 2d 759, 761 (Fla. 1976))).

There is, however, one remaining basis Marshall asserted as a potential avenue for recovering his attorney's fees in seeking Mr. Soss's disqualification as the trustee of Leon's trust, section 736.1005 of the Florida Statutes. On this point, the circuit court's order stated only that there was "no statutory or contractual basis for attorney's fees." That is incorrect. Section 736.1005 states: "Any attorney who has rendered services to a trust may be awarded reasonable compensation from the trust." Since the probate court assumed jurisdiction over the trust and this underlying dispute concerning the trust's trustee, the statute was applicable here and could have provided a basis for Marshall to recover his attorney's fees. We express no opinion about whether such an award would be proper under section 736.1005. That, of course, will be a matter within the circuit court's discretion to first decide. Cf. Saints in Christ, Temple of Holy Ghost v. Fowler, 448 So. 2d 1158, 1159 (Fla. 1st DCA 1984) ("[W]e do not imply that an award of attorney's fees is proper in this case . . . . On remand, the trial judge shall determine entitlement as well as the amount of any attorney's fees, subject, of course, to appropriate review by this court if sought."). We hold only that the circuit court should have considered and ruled upon this argument before it denied Marshall's motion. See Boykin v. Garrison, 658 So. 2d 1090, 1090 (Fla. 4th DCA 1995) ("The law is well settled that a trial court must exercise its discretion where discretion has been provided . . . ." (citing Glosson v. Solomon, 490 So. 2d 94 (Fla. 3d DCA 1986))). On that basis, we are constrained to reverse the circuit court's order so that the court can now make a ruling on Marshall's statutory argument for fees.

B.

Having concluded that Marshall's statutory argument to recover his fees requires further consideration by the circuit court, we pause to address a notification issue concerning his motion, as there was disagreement below about this issue and some clarification may be beneficial to the circuit court and the parties on remand. Section 736.1005(1) includes the following somewhat awkwardly crafted sentence regarding notice:

> The attorney [who has rendered services to a trust] may apply to the court for an order awarding attorney fees and, after notice and service on the trustee and all beneficiaries entitled to an accounting under s. 736.0813, the court shall enter an order on the fee application.

While ultimately denying Marshall's motion for attorney's fees, the circuit court observed during the hearing that the trustee and approximately forty named beneficiaries of Leon's trust should have been provided prior notice of the hearing under this provision of the statute. Marshall disagreed with the circuit court's reading. Instead, he posits that he need not have provided notice at the time he filed his motion, only sometime before the court entered its order on his motion—a view ostensibly supported by the compound-complex structure of this statute's sentence and the presence of a dependent, adverbial clause ("after notice and service") that, grammatically, would seem to relate only to the independent clause it precedes ("the court shall enter an order on the fee application"). Cf. Fla. Hurricane Protection & Awning, Inc. v. Pastina, 43 So. 3d 893, 900-01 (Fla. 4th DCA 2010) (Farmer, J., dissenting) ("The subordinate clause functions adverbially, laying down the condition under which the independent clause will have effect."). Thus, as Marshall would have it, the court's entry of an order

- 11 -

on his fee application would be the operative deadline that implicates the statute's requirement to furnish notice of that application.

That is a rather peculiar way to read a notice provision. It also elides the real query—the precise ambiguity, if you will—that this section holds. Neither the statute's sentence's text, its structure, nor the rules of grammar provide a definitive answer to the temporal question: When, exactly, does notice under this statute have to be provided to these parties? We must look to rules of statutory construction for guidance. Joshua v. City of Gainesville, 768 So. 2d 432, 435 (Fla. 2000) ("[I]f the language of the statute is unclear, then rules of statutory construction control." (citing Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984))). Here, the principle of reading the notice provision in pari materia directs us to other parts of this compound-complex sentence that a grammatical convention, strictly applied, would otherwise avoid. See O'Hara v. State, 964 So. 2d 839, 843 (Fla. 2d DCA 2007) (observing that statutory language ought not to be read in isolation, but "taken in context, so that its meaning may be illuminated in the light of the statutory scheme of which it is a part" (citing Thompson v. State, 695 So. 2d 691, 692 (Fla. 1997))); see also Wagner v. Botts, 88 So. 2d 611, 613 (Fla. 1956) ("We deem it proper to adhere to what now appears to be the better rule which is to treat the rules of punctuation on a parity with other rules of interpretation."). Within this very sentence, in the first independent clause, a precise point in time to utilize as a reference point is apparent—the attorney's application for fees—a point that coincides precisely with when notices of hearings are ordinarily required. See Stevens v. Nationstar Mortg., LLC, 133 So. 3d 628, 629 (Fla. 5th DCA 2014) (observing that the requirement that all filed pleadings and papers in court

proceedings be served on each party or their counsel "is to satisfy the constitutional requirement of due process"); see also Fla. R. Jud. Admin. 2.516(a). That is how we construe this provision. Reading this statute's sentence as a whole, in pari materia, we hold that an applicant for attorney's fees under section 736.1005 must serve an application for attorney's fees to the parties identified in the statute contemporaneously with the filing of the application with the court.

Accordingly, we reverse the circuit court's order to the extent that the court did not rule upon Marshall's statutory argument to recover his fees. In all other respects, we affirm the decision below.

Affirmed in part; reversed in part; and remanded.

KHOUZAM and SALARIO, JJ., Concur.

- 13 -